## FORT WORTH & RIO GRANDE RY. CO. v. J. L. JONES.

### Decided January 28, 1905.

**1.—Carrier of Passengers—Stamping Ticket for Return.**

Where a passenger duly presents a round-trip ticket to the stipulated agent at the terminal point to be stamped for return, and the agent refuses to stamp the ticket, the passenger has the right to return thereon notwithstanding such refusal.

**2.—Same—Rude Conduct to Lady Passenger—Mental Suffering.**

Evidence that, when the conductor called on plaintiff's wife for her ticket, and she presented it to him, he rudely threw it in her lap, declaring it no good, and in the presence of other passengers denied the truth of her statement that she had presented it to the ticket agent at the terminal point for stamping, and that the conductor's language and conduct very much humiliated her, was sufficient to warrant the court in submitting the issue of humiliation and mental suffering on the part of the wife, and of plaintiff's right to recover therefor.

**3.—Same—Leading Question.**

Questions to plaintiff's wife asking her whether or not the conduct of the conductor about the ticket (in throwing it back to her), and the language he used, preyed on her mind, and, if she was humiliated thereby, held to be leading, and the admission of her answers thereto, over objection, to constitute error.

**4.—Same—Error not Rendered Harmless.**

That plaintiff's wife subsequently, in her testimony, and without further objection then made, repeated the language put in her mouth by the leading questions by saying that she was humiliated, and that the matter preyed on her mind, did not render harmless the error in permitting the leading questions and answers thereto, there being no other evidence in the case to the same effect.

**5.—Same—Excessiveness of Verdict not Complained of.**

The amount of the verdict for mental anguish appearing to be large, and the error in admitting the answers to the leading questions having a tendency to increase such allowance, it was immaterial that no assignment of error complained of the verdict as being excessive, since the court will look to the verdict in determining whether or not such an error was harmless.

**6.—Same—Mental Anguish.**

Anger is not ordinarily classed as mental suffering, and, unless arising from adequate cause, or of degree amounting to mental suffering, will not warrant a recovery of damages therefor.   (Speer, Associate Justice, dissenting.)

Appeal from the District Court of Erath.   Tried below before Hon. W. J. Oxford.

*West, Chapman & West* and *Theodore Mack,* for appellant.—1. Where a railroad ticket contains the reasonable stipulation that before it shall be honored for return passage it must be presented to agent at terminal point and there signed and dated, etc., and that such agent has no authority to waive any of the terms of the contract as made between the purchaser and railroad company issuing the ticket, it is error to permit testimony showing a parol waiver of the terms of the contract by an unauthorized agent to go to the jury.   Houston & T. C. Ry. Co. v. Arey, 44 S. W. Rep., 894; Missouri, K. & T. Ry. Co. v. Harrison (Sup. Ct.), 80 S. W. Rep., 1140.

2. The court erred in overruling defendant's motion for a new trial, because the verdict of the jury finding for the plaintiff $500 was contrary to the evidence and the charge of the court, for that there was no evidence that plaintiff's wife suffered any humiliation or mortification, but on the contrary was only made angry and put in a frame of mind which made her desirous of fighting.   Railway Co. v. Armstrong, 38 S. W. Rep., 368.

3. Where the evidence sharply conflicts and is evenly balanced, a leading question to an intelligent witness should not be permitted by the

court. The mere fact that a question is put in the form, "did or did not," or "whether or not," does not purge it of the vice of being leading, where the question suggests the answer. International & G. N. Ry. Co. v. Dalwigh, 92 Texas, 657; Lott v. King, 79 Texas, 292; Davis v. State, 43 Texas, 189; San Antonio & A. P. Ry. Co. v. Hammon, 91 Texas, 514; Lentz v. City of Dallas, 96 Texas, 258.

*Riddle & Keith,* for appellee.—Where one holding an excursion ticket stipulating that it shall be presented to the agent at the terminal point for the signature and stamp of such agent, before using it for return passage, and the party holding such ticket expressly complies with such condition, by presenting such ticket to said agent, and requesting him to sign and stamp same, and he refuses to so, and informs plaintiff that the ticket is good and does not need his stamp and signature; then if such person in attempting to use such ticket within its time limit, is on account of its not being signed and stamped, insulted by the conductor of the road issuing such ticket, and the ticket dishonored, and fare is demanded and paid to the conductor, the company is liable for the fare thus extorted from the passenger, and for the damages accruing from such insult. Missouri Pac. Ry. Co. v. Martino, 18 S. W. Rep., 1069, 21 S. W. Rep., 781; Head v. Railway Co., 79 Ga., 358, 7 S. E. Rep., 217.

CONNER, CHIEF JUSTICE.—The appellee instituted this suit to recover damages in the sum of $6,502.25, alleging in substance that appellee's wife had purchased a round-trip excursion ticket from Stephenville, Texas, to Exeter, Missouri, which, according to its terms, was required to be presented to the agent at Exeter, and there signed, stamped, etc., before being honored for return passage; that the ticket was presented by appellee's wife to the agent at the terminal point, and she was by him informed that it was unnecessary for him to stamp it or for her to sign it, and he refused to require the identification and stamp the ticket, as directed by the selling agent; that appellee's wife accordingly returned to Texas, each conductor en route honoring the ticket until she arrived at the city of Fort Worth, at which place she took passage upon the proper train of appellant, and the conductor thereof refused to honor the ticket, and grossly insulted and humiliated appellee's wife, requiring her to pay a cash fare of $2.25 for her transportation from Fort Worth to Stephenville; that said insults, etc., resulted in the damages sought.

The appellant, among other things, filed a general denial, setting up the written contract embodied in the ticket making it obligatory upon appellee's wife to present the ticket to the agent at Exeter for stamping and signature before it should be honored for return passage, and especially denying any rude or impolite conduct on the part of its conductor, and further specially alleged that, if the agent at Exeter made the statement to appellee's wife, as alleged, it was about a matter beyond the scope of his authority, and did not relieve her of her contractual duty. The verdict of the jury was in appellee's favor for the cash fare, $2.25, and the further sum of $500 for the mental suffering occasioned by in-

sulting and rude conduct of the conductor, and judgment was entered accordingly.

It is undisputed that appellee's wife purchased the ticket from Stephenville, Texas, to Exeter, Missouri, containing stipulation for identification, etc., at terminal point as alleged. We think the evidence also substantially establishes the fact that appellee's wife presented the ticket to the agent at Exeter for the purpose of stamping, signing and identification, and that said agent refused to comply with the duty imposed upon him by the stipulation of the ticket, and that hence appellee's wife had the right to return upon the ticket. The law has been so well settled upon this branch of the case that we think it unnecessary to further discuss it. (See Gulf, C. & S. F. Ry. Co. v. St. John, 13 Texas Civ. App., 257, by this court, in which writ of error was refused; Missouri Pac. Ry. Co. v. Martino, 2 Texas Civ. App., 634, 18 S. W. Rep., 1069, 21 S. W. Rep., 781; Head v. Georgia Ry. Co., 79 Ga., 358, 7 S. E. Rep., 217.) We therefore think the court was authorized to submit the issues to the jury, and to receive the evidence of appellee's wife, as complained of in the first and second assignments, and that the verdict of the jury for the cash fare paid by appellee's wife was also supported by the evidence; from which it follows that the fourth and fifth assignments should be overruled.

We think the third and sixth assignments, complaining of the fourth paragraph of the court's charge in submitting the issue, and of the verdict of the jury in finding for appellee in the sum of $500, because there was "no evidence that plaintiff's wife suffered any humiliation, restraint, mortification or mental anguish," should be overruled, for she testified, in substance, that, when called upon therefor, she presented the ticket to the conductor, who, after its examination, rudely threw it in her lap and declared that it was no good, and, in the presence of other passengers, denied the truth of her statement that she had presented the ticket to the agent at Exeter, and that the conductor's language and conduct very much humiliated her. It certainly can not be reasonably said that this constitutes "no evidence" authorizing the submission of the issue and the imposition of a verdict for damages.

We think, however, that there was error in the action of the court, as assigned in the seventh, eighth and ninth assignments. While appellee's wife was testifying as a witness she was permitted, over appellant's objection, to testify in answer to the indicated interrogatories, as follows: (1) "The throwing of the ticket back into your lap and telling you that it was no account—did that prey on your mind, or not?" to which the witness answered, "Yes, sir." (2) "I will ask you to state whether or not the conduct of the conductor there about this ticket, and the language he used to you, preyed on your mind," to which the witness answered, "Yes." (3) Concerning her feelings at the time that the ticket was questioned by the conductor as to its validity, appellee's counsel questioned the witness as follows: "Q. Were you humiliated there? A. Yes, sir." The objections that were made to these interrogatories and answers were that the interrogatories were leading and suggestive. "Questions are objectionable as leading not only when they directly suggest the answer which is desired, but also when they embody a material

fact, and admit of an answer by a simple negative or affirmative, though neither the one nor the other is directly suggestive." (2 Phillips on Evidence, 745; 1 Greenleaf on Evidence, sec. 434; Rapalje on Witnesses, sec. 241.) The substantial crucial fact in issue in this case was whether appellee's wife suffered mental distress or humiliation from the conduct of appellant's conductor, as alleged, and this fact seems clearly to be embodied in the interrogatories propounded, which admit of an answer by a simple negative or affirmative, and hence are leading within the rule as announced in the above authorities. This aspect of the question, however, may possibly be affected by the modification of the common law rule recognized by our Supreme Court in the case of Lott v. King (79 Texas, 292), and noticed in the case of Railway Company v. Dalwigh (92 Texas, 655). But, if so, we see no answer to the further fact that the questions quoted put it in the power of the witness, by the simple answer given, to echo back the words of counsel, and to give a desired answer in a desired form upon the material point in the case, which, upon principle and authority, must be held to be objectionable. (See Railway Company v. Dalwigh, supra; San Antonio & A. P. Ry. Co. v. Hammon, 92 Texas, 509, 50 S. W. Rep., 123, and authorities therein cited.) We think the witness should have been required to state, in her own language, what, if any, effect the demeanor of the conductor, as she detailed it, had upon her. The answers of the witness, if credited, established the fact that the acts and words of the conductor "preyed upon her mind" and "humiliated her," and thus not only filled the legal requirements of appellee's case, but also tended to augment the recovery. These terms were selected by the learned counsel of appellee, embodied in the questions propounded, and echoed back by the witness. We have no means of knowing that the witness, had she been permitted to describe the effect of the conduct of the conductor in terms of her own, would have used terms of like force and effect. The witness alone, it seems to us, should be presumed to best know the effect upon her of the circumstances and of the terms which will most accurately and fully describe such effect.

For the purpose of showing the force of the objections made, and of our comment upon the interrogatories and answers set out, we will further add that, while appellee's wife testified that several other passengers were present, "both in front and behind her," none of such other passengers were called to testify in behalf of appellee, upon whom rested the burden of proof. She also testified, in addition to what we have heretofore stated, that "when he (the conductor) first threw the ticket back in my lap I told him that he was mad, and he said that he was not mad that he knew anything about, and I told him that if he was not mad he was the crankiest man I ever saw. . . . Yes, sir, I was mad. He told me he wanted me to borrow the money, and I told him I would not borrow it (appellee's wife lacked five cents of having enough money to pay the cash fare demanded). He was mad at me. No, sir, It is not a fact that I was the only person that was mad. I don't know whether he was mad or not, but, if he was not mad, he talked like he was mad. . . . I was mad enough to have hit him in the face, and told him so. I did not make any effort to hit him in the face; I only

said that I only felt like striking him in the face." The conductor testified in substance that it was his duty, under the circumstances, to refuse to permit transportation on an unsigned ticket, and that this is true under ordinary circumstances is not disputed. He also denied all rudeness of manner.

It will be observed that, excluding the terms of counsel's selection and embodied in the interrogatories quoted, the evidence of appellee's wife is susceptible of the construction that she was merely angry. Save in telegraph cases damages for mental emotion of any kind is rarely allowed when unaccompanied with physical pain or pecuniary loss, on the grounds that such damages are uncertain and speculative, and the rule in telegraph cases is of comparatively recent origin, and by no means universally applied. (Sutherland on Damages, sec. 977, et seq.) As defined, anger is not ordinarily classed as mental suffering. The Standard Dictionary defines it as, "violent and vindictive passion or emotion, caused by injury or insult, real or imagined. . . . Anger is commonly a sin." Saint Luke says that on one occasion all they in the synagogue were filled with "wrath" at the statements of the Savior. (Luke, 4:28.) And the antonyms of anger, as given by the dictionary cited, "amiability, forbearance, gentleness, patience, self-control, self-restraint," are emotions of the mind that we are taught to cultivate by Him who spake as never man spake. It may be that the courts will hereafter offer a premium by way of damages for the cultivation of the emotion of mere anger, but we have been cited to no case where it has thus far been done, and we hardly feel yet prepared to thus further invade the field of speculative damages, at least, not until it is established by the verdict of the jury as just wrath, arising from an adequate cause, and of degree amounting to mental suffering.

It is insisted (1) that the fact of mental suffering, which the answers to the objectionable questions tends to establish, is otherwise fairly undisputed; and (2) that substantially the same evidence was introduced without objection. If these propositions were legally maintainable it would, of course, follow that the errors discussed would be harmless, but the majority have been unable to so construe the record. Adopting the version of the occurrence as detailed by appellee's wife, as we must do in deference to the jury's verdict, we feel unable to say, as matter of law, that mental suffering is the necessary result, nor can we say that the jury would have so found upon the evidence exclusive of the answers to the objectionable questions. Aside from some expressions that, of themselves, are not, as we think, so clearly of certain actionable meaning, the evidence relied upon as showing that there is testimony of the same legal effect as that improperly elicited is that of appellee's wife. As it appears in the statement of facts, she, one or more times, substantially or literally reiterates, without accompanying objection, the terms included in the interrogatories. But the fact that no objection in the same connection appears in the statement of facts in nowise contradicts the bill of exceptions in this case. The evidence, aside from the manner of its production, is perhaps unobjectionable. The statement does not set forth the questions that evoked the answers relied upon, and nowhere affirmatively shows such a drawing out of the testimony on the part of appellant as clearly amounts to a waiver of the objections urged

in the bill which is the proper receptacle. The objections urged go to the questions—the manner of eliciting the testimony—and if it be true that a witness, by mere repetition, may avoid the force of objections urged to vicious education in the use of necessary terms by leading and pregnant questions, then, speaking generally, and without reference to the parties in this case, litigants are certainly at the mercy of the artful lawyer and the swift witness.

The cases relied upon as establishing the contentions noted we think distinguishable from the one before us. Without reviewing them at length, we think it will be found that, for the most part, they are cases where it appears that one or more other witnesses have given the same testimony, and no objection thereto, by bill or otherwise, appears in the record, as illustrated by the case of Fort Worth & D. C. Ry. Co. v. Greathouse (82 Texas, 104); or where some other and different fact of substantially the same legal effect has, without objection, been proven, as in case of the Pacific Express Company v. Dunn (81 Texas, 85). Neither is the case here. Here no one but the witness, to whom the objection relates, uses terms or testifies to a state of facts as fully and forcefully sustaining appellee's case, nor does she, or any other witness, testify to some unobjectionable fact of the same legal and forceful import as the terms under consideration.

Some stress is also laid upon the fact that no complaint is made that the verdict is excessive in amount. It is true that no assignment has been presented specifically complaining of any part of the verdict less than the whole. But the testimony shows that, sometime after the arrival of appellee's wife at Stephenville, appellant issued and delivered to appellee a bankable voucher in the sum of $2.25 for the cash fare paid by his wife, which, however, after consultation with his attorney, he refused to receive, and hence returned to appellant's agent, and, as already noticed, complaint is made that the entire amount of the verdict for the $500, as damages for the mental anguish, is wholly unsupported by the evidence. Conceding that, in this instance, an objection to the whole does not include an objection to every part, and treating the assignment presented, as we have done, as not sufficient to raise the question of mere excess, it must nevertheless be conceded that the verdict for damages for mental anguish, the subject of the only substantial controversy in this case, seems large. Verdicts in like sums in similar cases, on proper assignment, have been more than once declared excessive by this court (Railway v. St. John, supra; Railway v. Dennis, 4 Texas Civ. App., 91), and many cases might be cited, had we the time, in which the amount of the verdict, not attacked as excessive, has been looked to in the effort to determine whether a given error is harmless. If it be conceded that the evidence, exclusive of that which is objectionable, is sufficient to support the verdict on the issue of mental suffering, it can not, we think, be further held with certainty that the objectionable did not add weight—force—to the unobjectionable, and thereby render more certain a finding of the jury in appellee's favor. Appellee persistently sought its introduction. He hence must have thought it added something to the other evidence now relied upon as supporting the verdict. If it did, we do not feel justified in holding it harmless.

In concluding, we will but add that the testimony as a whole has not

impressed us as presenting one of those cases of flagrant outrage or willful oppression that compel a finding of damages for mental suffering, as contradistinguished from some other emotion; and the rule that we have endeavored to have constantly in mind undoubtedly is that, where it appears that an error has been committed, then the right of the objecting litigant requires of us a reversal, unless we can say, from the whole case, that no injury clearly appears. (Railway Co. v. Hannig, 91 Texas, 347.) This the majority have felt unable to do, and it is accordingly ordered that the judgment be reversed and the cause remanded.

*Reversed and Remanded.*

### DISSENTING OPINION.

SPEER, ASSOCIATE JUSTICE.—I am unable to agree to the reversal of this case upon the grounds stated in the majority opinion. On the contrary, I think, in view of the entire record, that no error is shown in the particulars complained of. The questions objected to as being leading and suggestive, together with the answers given thereto, are set forth in the majority opinion, and need not here be reproduced. I think the case falls within the well-established rule that a cause will not be reversed because of error in permitting leading questions where substantially the same evidence is introduced without objection, and where the fact which the evidence tends to establish is otherwise fairly undisputed. (Northern Texas Traction Co. v. Lewis, 11 Texas Ct. Rep., 659; St. Louis & S. W. Ry. Co. v. Honea, 11 Texas Ct. Rep., 708; Fort Worth & D. C. Ry. Co. v. Greathouse, 82 Texas, 104; Missouri, K. & T. Ry. Co. v. Baker, 4 Texas Law Jour., 264, 9 Texas Ct. Rep., 919; Letcher v. Morrison, 79 Texas, 240; City of San Antonio v. Porter, 24 Texas Civ. App., 444, 59 S. W. Rep., 922; San Antonio Traction Co. v. Crawford, 71 S. W. Rep., 306; Texas & P. Ry. Co. v. Gay, 27 S. W. Rep., 742; Pacific Express Co. v. Dunn, 81 Texas, 85; Fire Association v. Jones, 40 S. W. Rep., 44.) In the agreed statement of facts is found what I take to be substantially, if not identically, the same testimony as that elicited by the questions objected to as being leading. On page nineteen Mrs. Jones testifies that she was humiliated by the conductor's conduct toward her. At page twenty she says: "The conductor's conduct in throwing the ticket back in my lap preyed upon my mind. The conductor's conduct toward me was such that it preyed upon my mind so that I was nervous and felt hurt by it. I felt hurt and nervous after the second conversation by the way this conductor had treated me. After I arrived at Stephenville, and met my husband, I told him about the way the conductor had treated me; it was just a few minutes after I arrived at Stephenville and got off of the train that I told him about it." Again, on cross-examination, speaking with reference to the conductor's conduct toward her, she said: "This thing made me nervous and humiliated me. Yes, sir, I was mad. He told me he wanted me to borrow the money, and I told him that I would not try to borrow it. He was mad at me." On page thirty-six her husband, the appellee, testified: "I was at the depot when my wife returned from the trip. When she got off of the train here in Stephenville on her return she seemed to

be very much excited. I had to call her two or three times. She just seemed to be bewildered, lost and excited. I started to take her into the ticket office and she wanted to go into the express office—I mean that I started to take her into the waiting room. She made complaint to me about this ticket matter. She also made complaint to me about her feelings. That was after we started home. . . . She complained of being weak and nervous after she came back right at once. . . . She didn't know that I was there at the train until I had called her the second time; she was trying to get into the express office. She was almost wild and excited."

To my mind the real issue of the case, upon which there was conflict of testimony, was as to the treatment accorded to Mrs. Jones by appellant's conductor. There was a sharp conflict in the evidence upon this issue, but the jury has settled this conflict in favor of appellee's theory. Upon the question of whether or not appellee's wife suffered humiliation or other mental pain, as alleged, there is fairly no conflict whatever, but such fact may be taken as undisputed. It is well settled that mental anguish, when constituting the basis of a recovery, need not be expressly proved, but that juries may, from their own knowledge and experience of human nature, estimate damages from such cause without any evidence. (Western Union Tel. Co. v. Adams, 75 Texas, 531; Western Union Tel. Co. v. McLeod, 22 S. W. Rep., 988; Western Union Tel. Co. v. Zane, 25 S. W. Rep., 722.) It may be that a recovery for mental anguish is more frequently allowed in the telegraph cases than in others. But the right to recover for such suffering is by no means limited to the telegraph cases. It has been repeatedly held, and by this court, in other cases, that mental anguish is a proper element of damages even when unaccompanied with physical injury. (Leach v. Leach, 33 S. W. Rep., 703; Missouri, K. & T. Ry. Co. v. Tarwater, 75 S. W. Rep., 937.) If it is unnecessary to prove mental suffering directly in the telegraph cases, I see no reason why the same rule should not apply to other cases where mental anguish is a proper item of recovery. So that, were we to exclude all the direct testimony quoted in this opinion, and in the majority opinion, upon the issue of mental suffering, and consider only the circumstances attending the transaction, the case, briefly stated, would stand thus: Appellee's wife, a passenger rightfully on appellant's train, entitled to passage to her home at Stephenville, is wrongfully and rudely insulted by appellant's conductor in the presence of numerous other passengers, in the manner detailed by her in her testimony. She, a woman, and, according to her testimony, three months advanced with child, is threatened by the conductor with ejection unless she again pays her fare, which she is forced to do. Under these circumstances and surroundings the jury might properly find that she was most naturally angered, humiliated, and suffered other mental stress. But the case is by no means left in this condition. Eliminating from the present consideration her statements that the conduct of the conductor preyed upon her mind, we find that she has testified, without objection, that she was humiliated; that she felt hurt and was nervous; that she immediately apprised her husband of the conductor's treatment toward her; that she was mad. That the husband testified that, upon reaching Stephenville, she told him about the matter; that she was wild and excited. So that,

I think, from the record, it is undisputed that appellee's wife was humiliated and suffered mental anguish. This fact was amply proved, so far as testimony could prove it, without the answers given to the objectionable interrogatories. It was urged in the majority opinion, inferentially, at least, that Mrs. Jones's testimony to the effect that she was angered by the treatment of the conductor is evidence to the contrary, but I do not so consider it; on the other hand, I take it to be a cogent circumstance tending to show a state of mental suffering, for which the appellee would be entitled to recover in this action. Anger being, according to the authority quoted by the Chief Justice, a "violent vindictive passion or emotion raised by injury or insult, real or imagined" —and the jury have found in this case that the injury and insult were real—I think it is evidence of a high character tending to show mental suffering, and I have searched the record in vain for evidence, direct or circumstantial, tending to the contrary. Most naturally appellee's wife was angered by the treatment received at the hands of the conductor. She may have committed a sin in thus losing her temper under such circumstances, but we should not deny her a recovery upon this ground.

A point is sought to be made in the majority opinion against the appellee because he failed to call any of the passengers—although many were shown to have been in the coach at the time—to corroborate his wife's testimony. I have noticed, however, that appellee was not alone remiss in this particular. The appellant probably had at least equal means and opportunity of procuring the testimony of these persons, yet failed to do so. Besides, it is difficult to see how any of these persons could have testified whether Mrs. Jones did or did not suffer mental anguish; and, moreover, the point is entirely foreign to the question before us for determination. The jury has accepted appellee's version of the affair.

In International & G. N. Ry. Co. v. Bibolet (57 S. W. Rep., 974), leading questions were held by the Court of Civil Appeals to be harmless where the answers only tended to augment the recovery, and there was no complaint of the excessiveness of the verdict. If that is the law, then, for at least as strong reason, this, if error at all, is harmless. There is no complaint of the amount of the verdict. But it is at least doubtful if the answers to the objectionable questions in this case even go to the extent of those in the Bibolet case, for the reason that they go no further than to show that "the conduct of the conductor preyed upon her mind and humiliated her, and thus filled the legal requirements of appellee's case." But the legal requirement here referred to—i. e., the establishment of mental suffering—is already otherwise fully established by the circumstances and undisputed testimony, and the answers to the questions objected to are only cumulative in this particular.

In Pacific Express Co. v. Dunn, supra, where it was necessary for the plaintiff to prove ownership of a house and lot, our Supreme Court applied the principle which should control this case in these words: "The question which brought out the evidence as to possession may have been leading, and the broad assertion of ownership may have been but the assertion of an opinion, but these matters furnish no reason for reversal in view of the evidence of right furnished by the possession proved." So, here, the questions which brought out the evidence that the conductor's

conduct preyed on Mrs. Jones's mind, and humiliated her, may have been leading and suggestive, but these matters furnish no reason for reversal in view of the undisputed evidence of mental suffering furnished by the circumstances surrounding the transaction and the testimony of the witnesses already referred to by me. It is to be noted, as stated in the majority opinion, that Mrs. Jones's evidence, aside from the manner of its production, is unobjectionable. The principal theory upon which leading questions are not allowed is that, by this means, a party is enabled to prove a fact which he would not otherwise be able to prove. Here the fact proved in response to the leading questions is otherwise fully proved and undisputed, in language, to my mind, quite as strong as that given in response to the leading questions. It is too plain for argument that, to say the conduct preyed upon Mrs. Jones's mind, is no stronger than to say it humiliated, angered, hurt and excited her and made her nervous. Without the objectionable testimony, the jury must have found that appellee's wife suffered mental anguish. To have found otherwise upon this issue would have been wholly to disregard all the testimony.

Nor am I prepared to assent to the proposition that the verdict in this case is excessive. It is so intimated in the majority opinion, and the intimation is based upon the cases of Railway Company v. St. John and Railway Company v. Dennis, which cases are said to be similar to the one now before us. But I think the most casual examination of these cases will disclose such dissimilarity of facts as to destroy their value as authority in this respect. In each of these cases the complaining party, ejected from the passenger train, was a man, and the inconvenience to the plaintiff in each case was shown to be inconsiderable, and yet this court in each case suggested the sum of $250 as reasonable damages. I think it is apparent that $500 is very reasonable damages in this case. Appellant has not complained that the verdict is excessive, and I do not think it is.

Finally, there is yet another reason why this cause should not be reversed. If the form of the questions was objectionable, as being leading, the answers given in the statement already quoted show that the witness was not "led" by them, but in her own language explained how the matter affected her mind—i. e., preyed on her mind—so that she was made nervous and felt hurt by it. A leading question ceases to be leading when it doesn't lead.

So that, whether the questions objected to were leading or not, I think, for the reasons given, no error is shown, and the judgment should be affirmed.

Writ of error refused.