Forest Leon ETHINGTON, Appellant,

v.

The STATE of Texas, State.

No. 2–87–055–CR.

Court of Appeals of Texas,
Fort Worth.

April 6, 1988.

Rehearing Denied June 1, 1988.

John H. Hagler, Douglas D. Mulder, Dallas, for appellant.

Tim Curry, Criminal Dist. Atty., David Chapman, Asst. Criminal Dist. Atty., for State.

Before FENDER, C.J., and JOE SPURLOCK, II and LATTIMORE, JJ.

## OPINION

FENDER, Chief Justice.

Appellant, Forest Leon Ethington, appeals from a jury conviction of aggravated robbery. *See* TEX.PENAL CODE ANN. sec. 29.03 (Vernon 1974). The jury assessed punishment at life imprisonment in the Texas Department of Corrections.

We reverse and remand.

On March 27, 1985, Rosberg was shot and killed during a robbery of his coin shop. One of the participants, Heston, testified that appellant planned the robbery and acted as a lookout while Heston and Turnbough committed the robbery. According to Heston, Turnbough shot Rosberg three times in the head with appellant's .22 caliber automatic pistol which had been fitted with a silencer. Appellant was subsequently discovered in possession of the .22 caliber Beretta automatic, blueprints for a silencer, some parts of a silencer, and the fruits of the robbery.

Although appellant raises six points of error on appeal, we need only address appellant's point of error three to dispose of this case. Appellant contends in his third point of error that the trial court's admission of testimony regarding an extraneous offense, i.e., an armored car robbery, constituted reversible error. We agree.

The State offered testimony by Scott in order to corroborate the State's other evidence of appellant's participation in the robbery. Scott, on direct examination, was properly permitted to testify that: (1) appellant looked at two coin shops while Scott was traveling from California to Texas with appellant and Turnbough; (2) Scott watched appellant build and test fire a silencer which was attached to appellant's .22 caliber Beretta; and (3) appellant told Scott the correct way to rob a coin shop.

On cross-examination, defense counsel questioned Scott about the four days he spent traveling with appellant and Turnbough from California to Texas. During this cross-examination, Scott testified, "I was coming to Texas to do another thing." Subsequently, on redirect examination, the following exchange occurred:

Q. [BY MR. GILL:] ... [W]hen you were asked by defense counsel a few minutes ago also, you talked about another job you were coming here to Texas to do; is that right?

A. Yes.

Q. Who were you going to do that job with?

A. Hap Kelly and Mike Turnbough.[1]

Q. What kind of job was that going to be?

MR. GLOVER: Judge, that's extraneous. We object to it.

THE COURT: Overruled.

BY MR. GILL:

Q. You can go ahead and tell the Jury what kind of job that was going to be.

A. We were going to rob an armored truck.

Q. Did you-all, in fact, rob that armored truck?

A. Yes, we did.

Q. Approximately when was it that y'all robbed it?

A. August of '85.

Q. Okay. And would you tell the Jury, please, what your role was in the robbery of that armored car, exactly what you did?

A. I was a hall man.

Q. What did you do exactly?

A. I unloaded money sacks.

Q. Okay. Who else participated in that robbery?

A. Mike Turnbough.

Q. Who else?

A. Hap Kelly.

Q. What did Hap Kelly do?

A. He was in the car. He was the look-out in the car.

Q. What kind of car?

A. Ford Fiesta.

Q. Okay. Who planned that armored car robbery?

A. It was surveilled for about a month.

Q. By who?

A. Hap Kelly, Turnbough and myself.

Q. Okay. And would you tell the Jury, please, exactly how that robbery was accomplished?

A. We took the truck out from Mervyn's in Richardson. Took the driver out, put him in the back, tied him up.

Q. How did you take the driver out?

A. At gunpoint.

---

1. The record reflects that appellant was known to Scott by the name of Hap Kelly.

Q. Did Hap Kelly tell you how to do that?

A. Turnbough did that, took the man out of the—

Q. Turnbough took the man out?

A. Uh-huh.

Q. Okay.

A. Right around the back I tied the man up. Turnbough drove the truck off to where we had another vehicle parked and we unloaded the truck.

It is a fundamental principle of law that an accused is entitled to be tried on the accusation made in the State's pleading and not for some collateral crime or for being a criminal generally. *Smith v. State*, 646 S.W.2d 452, 455 (Tex.Crim.App. 1983). Therefore, the State is generally prohibited from proving prior specific acts or extraneous offenses committed by the accused. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983).

This evidence may, however, be admissible to establish the similarities between the primary offense and the extraneous offense. *Moore v. State*, 700 S.W.2d 193, 201 (Tex.Crim.App.1985). Nevertheless, the State failed to demonstrate a high degree of similarity between the instant coin robbery offense and the extraneous armored car offense. In light of the insufficiently distinctive characteristics between the two offenses, the relevancy of the evidence does not outweigh its prejudicial potential. *See Collazo v. State*, 623 S.W.2d 647, 648 (Tex.Crim.App. [Panel Op.] 1981).

Furthermore, we do not accept the State's argument that the admission was harmless because the jury received the same evidence through the testimony of Clifton. During the direct examination of Clifton, the State inquired about the armored truck robbery. Immediately, defense counsel objected based on an extraneous offense ground. Only after defense counsel's objection was overruled did Clifton testify to the details of the extraneous offense. Once defense counsel received an adverse ruling on his extraneous offense objection, appellant had done all that was necessary to preserve his error for appeal. *See Evans v. State*, 622 S.W.2d 866, 871 (Tex.Crim.App. [Panel Op.] 1981). Error in the initial admission of the extraneous offense by Scott's testimony was not cured where the same evidence was admitted elsewhere over defense counsel's objection. *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App.1984).

The State claims that because appellant did not continue to object throughout Scott's rather lengthy testimony about the armored truck robbery and did not alternatively seek a running objection that appellant did not preserve error. However, the State cites no authority consistent with the facts of the instant case to support its proposition. Neither do we find any definitive authority which would support the State's proposition. Nevertheless, it is settled law in civil cases that where a first objection is overruled and properly preserved in the record, the party may assume that the judge will make the same ruling as to the offer by the same witness of the same or similar evidence, and the party is not required to repeat the objection. *J.I. Case Threshing Mach. Co. v. O'Keefe*, 259 S.W. 222, 226 (Tex.Civ.App.—Amarillo 1924, writ dism'd) (opinion on reh'g); *Ft. Worth R.G. Ry. Co. v. Jones*, 38 Tex.Civ. App. 129, 85 S.W. 37, 40 (1905, writ ref'd). We would adopt the above civil standard as it applies to the facts of the case at bar. We find it unnecessary for defense counsel, after his specific initial objection to an admission of an extraneous offense, to repeat his objection during Scott's continuous testimony of the details of the extraneous offense.

The State's argument that Scott's testimony on redirect was admissible under TEX.R.CRIM.EVID. 107, the rule of optional completeness, must also fail. Scott's testimony that he came to Texas to "do another thing" is not a testimony which creates a false impression or incompleteness as to necessitate extensive details to fully understand the statement. Accordingly, appellant's point of error three is sustained.

The trial court's judgment is reversed, and the case is remanded for a new trial.