Forest Leon **ETHINGTON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 736–88.

Court of Criminal Appeals of Texas, En Banc.

Nov. 6, 1991.
Rehearing Denied Dec. 18, 1991.

Douglas D. Mulder, John H. Hagler, Dallas, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall and David K. Chapman, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant, Forest Leon Ethington,[1] was convicted by a jury of the offense of aggra-

vated robbery. V.T.C.A. Penal Code, Sec. 29.03. The jury assessed punishment at life in the Texas Department of Corrections.[2] The Fort Worth Court of Appeals reversed and remanded in a published opinion, *Ethington v. State*, 750 S.W.2d 14 (Tex.App.—Ft. Worth 1988). We granted the State's petition for discretionary review to determine whether the Court of Appeals erred in holding evidence of an extraneous offense was improperly admitted during the trial. After further review, we will reverse the judgment of the court below.

Although the sufficiency of the evidence is not challenged on appeal, a discussion of the facts is helpful. Robert Rosberg, co-owner of the Artex Coin and Stamp Shop located in Pantego, a small community near Arlington in Tarrant County, was robbed and shot execution style on March 27, 1985 near regular closing time. One of the participants, Michael Heston, testified appellant planned the crime and recruited Heston and another man named Michael Turnbough to commit the robbery. Turnbough was to be the trigger man, and the plan was for Turnbough and Heston to enter the shop and ask to see some coins. Turnbough would take Rosberg at gunpoint to the back of the shop and bind his hands and feet to a table with plastic strips known as "flexcuffs" while Heston emptied the safes. Turnbough would then eliminate the only witness to the crime by shooting Rosberg in the head three times with a .22 caliber Beretta automatic pistol fitted with a homemade silencer belonging to appellant. While this was being carried out, Heston would unload the safes and carry the stolen property to his car. Appellant would act as lookout from across the street, listening to a police scanner radio tuned to the Pantego Police Department frequency for any alarms so as to warn his two associates in the shop. The robbery and murder were completed according to the plan. The three perpetrators met immediately after the robbery and returned to appellant's home.

---

1. Appellant is also known as Hap Kelly, Hap Ethington, and Joe Collins.

2. Now the Texas Department of Criminal Justice, Institutional Division.

Two months after the robbery, evidence from the Rosberg robbery was discovered offered for sale on the dealer table of appellant and his wife, Kathy, at a coin show for dealers and collectors held in Long Beach, California. The items recovered included some of Rosberg's personal collection, most of which was still contained in plastic envelopes marked with Rosberg's handwriting and dealer code number. Appellant gave statements to local police and to the F.B.I. saying a stranger had sold the merchandise to him at a previous coin show.

Appellant and his wife returned to their home in Texas and appellant was voluntarily interviewed by the Pantego Police Department regarding his possession of the stolen currency and any knowledge he had regarding the Rosberg murder. While released on bond for another unrelated offense, appellant traveled to California where he was apprehended at the home of Dennis Clifton by the F.B.I. on August 11, 1985 with more evidence associated with the Rosberg robbery and murder in his possession. This evidence included a .25 caliber pistol, diagrams for making silencers, pieces of a silencer, wanted posters for Michael Turnbough, newspaper clippings from Texas newspapers regarding the Rosberg murder, an expired California driver's license for Joe Collins, a passport for Michael Turnbough and a Texas driver's license for Michael Turnbough. Appellant was subsequently brought back to Texas, arrested and charged with the March 27, 1985 armed robbery of Robert Rosberg.

The error appellant complained of on direct appeal was the admission into evidence of a statement regarding an armored truck robbery committed August 5, 1985 in Richardson, Texas, as an inadmissible extraneous offense allegedly committed by appellant while out on bond for another unrelated offense. The evidence complained of came in during the direct testimony of prosecution witness Mark Scott. Each of the grounds for review we have granted relate to the propriety of allowing Scott to testify regarding an extraneous offense.

The State questioned Scott on direct about the circumstances surrounding his meeting appellant in California at the home of Dennis Clifton, a friend of the appellant. Scott testified he traveled from California to Texas with the appellant and Michael Turnbough in the appellant's motor home. Scott stated they stopped several times along the way to look at coin shops. Appellant and Turnbough described to Scott in detail the "proper" way to rob a coin shop. The Pantego robbery was mentioned to Scott by both men. Scott told the jury when the three men arrived in Texas, he watched appellant build and test fire a silencer on a .22 caliber short Beretta pistol. He also observed other weapons, including a .25 caliber automatic pistol with a Velcro handle. He testified to the frequent use of police scanner radios by the appellant. Scott testified that following his arrest for an aggravated robbery and kidnapping, Turnbough contacted him in the Dallas County Jail and told him to call appellant, which he did. Appellant told him not to talk to the District Attorney's office because the appellant had been caught with some stolen currency at a coin show in Long Beach, California.

On cross-examination, the defense suggested Scott fabricated his story in order to make a favorable deal in exchange for a guilty plea on his conviction. Moreover, the defense pointed out Scott was the only person charged and convicted of the armored truck robbery, implying appellant had not been charged with that offense. Defense counsel questioned Scott in great detail regarding a written statement he made to an investigator while in the Dallas County Jail following his arrest for the August 1985 crime. The statement was marked as Defense Exhibit Number 5. Scott was asked to read it to the jury as follows:

My name is Mark Christopher Scott. I am 24 years of age. I have eleven years of education and read and write and understand the English language. I am giving this statement to Detective Sergeant McBroom of my own free will and have not been promised anything in return. I am currently in the Dallas Coun-

ty Jail on charges from Richardson P.D. I met Hap Kelly approximately three years ago in Sylmar, California through Dennis Clifton around the end of June 1985. He approached me about *doing a job with himself and Mike Turnbough*. I said I would help him around July 1st of 1985. Hap, Mike and myself started from California to Texas in Hap's motor home. It took us about four days traveling to get to Texas. During the trip we had time to talk, and it was during this four day period Hap, Mike and myself discussed *a job* that Mike had done in Pantego. Hap said that he was caught with some dollar bills in Long Beach that were from a Pantego *job*. He said to his wife not to put the dollar bills on the table. When she did place them on the table, they were ID'd. That's when he was placed under arrest and bonded out. I think Hap said it was a *cap job* in Pantego because he knew the man. Hap and Mike used to talk about the *Pantego job* and how it was a *cap job*. When they did a *job* Mike would usually go in and Hap would wait in the car. They would talk about *jobs* where Mike came out with blood on his face. I had no reason to doubt Mike because he is capable of doing this. When we got to Texas we began on another *job*. Nothing more was said about Pantego. (emphasis added)

Defense counsel inquired why Scott did not question appellant and Mike Turnbough more about the Pantego robbery. Scott answered, "[b]ecause I was coming to Texas *to do another thing*." Once again, when questioned further about what Scott heard appellant and Turnbough say about the Pantego "job," Scott answered that everything he knew was in the written statement and "once we got to Texas, there wasn't much more said about the Pantego job *because we were out there doing another thing*." This was apparently an attempt to lay the predicate for possible impeachment of Scott's credibility.

On redirect examination, the State went into the question of the same written statement. The State began by showing the witness what was marked as Defendant's Exhibit No. 5, Mark Scott's written statement. Scott identified it as his statement in his own handwriting and the State offered it into evidence. The written statement was admitted after defense counsel told the court he had no objection. The State asked Scott for information about the other job he came to Texas to do with appellant and Turnbough. The defense objected to the question by stating, "Judge, that's extraneous. We object to it." The objection was overruled. Scott told the jury the job was to be an armored truck robbery. At this point, the prosecutor asked the witness whether the job was accomplished, by whom, and further details of the offense were elicited. The defense did not object to the detailed testimony after the initial objection to naming the "job" Scott, Ethington and Turnbough "came to Texas to do." [3]

The State asserts in its third ground for review, the Court of Appeals erred by finding defense counsel made a sufficient objection to Mark Scott's extraneous offense testimony, thus properly preserving the evidentiary error for appellate review. The State further contends the Court of Appeals erred by relying on a civil standard for properly preserving error instead of the standard used in criminal cases. [4]

---

3. Mark Scott implicated appellant as the person who planned and recruited him to participate in the armored truck robbery along with Michael Turnbough. Scott was the only one of the three men charged and convicted of the crime to which he pled guilty and received ten years probation.

4. *See Ethington v. State,* 750 S.W.2d 14 (Tex. App.–Ft. Worth 1988, pet. granted). The Court of Appeals stated:

"The State claims that because appellant did not continue to object throughout Scott's rather lengthy testimony about the armored truck robbery and did not alternatively seek a running objection that appellant did not preserve error. However, the State cites no authority consistent with the facts of the instant case to support its proposition. Neither do we find any definitive authority which would support the State's proposition. Nevertheless, it is settled law in civil cases that where a first objection is overruled and properly preserved in the record, the party

▰ In general, TEX.R.CRIM.EVID. 103(a)(1) and Tex.R.App.Proc. 52 govern preservation of error concerning the admission of evidence in criminal cases. Combined, these rules state that if, on appeal, a defendant claims the trial judge erred in admitting evidence offered by the State, this error must have been preserved by a proper objection and a ruling on that objection. The objection must be timely; that is, the defense must have objected to the evidence, if possible, before it was actually admitted. If this was not possible, the defense must have objected as soon as the objectionable nature of the evidence became apparent and must have moved to strike the evidence, that is, to have it removed from the body of evidence the jury is allowed to consider. The defense must have stated specifically the basis for the objection unless the particular ground was apparent from the context. The trial judge must have overruled the objection. If the judge refuses to rule on the objection, an objection to this refusal to rule is sufficient to preserve error in the admission of the evidence. When the court, out of the jury's presence, hears and overrules objections to evidence, those objections need not again be made before the jury when the evidence actually is presented to the jury. Error cannot be predicated upon a trial judge's ruling that admits or excludes evidence unless "a substantial right of the party is affected." Rule 103(a)(1) and Rule 52, supra.

▰ Further, with two exceptions, the law in Texas requires a party to continue to object each time inadmissible evidence is offered. In *Hudson v. State*, 675 S.W.2d 507 (Tex.Crim.App.1984), Judge McCormick stated, "[d]espite the improper form and content of the question, it is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection; defense counsel must object every time allegedly inadmissible evidence is offered." *Hudson, id.* at 511. General application of this rule has not proven to be burdensome for defense counsel in many cases.

In the alternative, there are two exceptions to this "contemporaneous objection" rule. The first is via the "running" objection, a traditional method of preserving error that has survived the promulgation of the Rules of Evidence.[5] This Court has held on prior occasions that a continuing or running objection has properly preserved error. *See Zimmerman v. State*, 750 S.W.2d 194 (Tex.Crim.App.1988); *Thomas v. State*, 723 S.W.2d 696, 701 n. 10 (Tex.Crim.App.1986). In *Sattiewhite v. State*, 786 S.W.2d 271 (Tex.Crim.App.1989) at page 283–84, footnote 4, we clearly stated:

In promulgating these rules [Rules of Appellate Procedure and specifically Rule 52(a)], we took no "pot shots" at running objections because in certain situations they have a legitimate function. A running objection, in some instances, will actually promote the orderly progression of the trial. When an attorney has an objection to a line of testimony from a witness, it is often disruptive for the trial judge to force him to make the same objection after each question of opposing counsel just so that the attor-

---

may assume that the judge will make the same ruling as to the offer by the same witness of the same or similar evidence, and the party is not required to repeat the objection. [citations to civil authority omitted]. We would adopt the above civil standard as it applies to the facts of the case at bar. We find it unnecessary for defense counsel, after his specific initial objection to an admission of an extraneous offense, to repeat his objection during Scott's continuous testimony of the details of the extraneous offense." *Id.* at 16.

5. In *White v. State*, 784 S.W.2d 453 (Tex.App.–Tyler 1989), the court found that a running objection granted in this case to inadmissible testimony extended only to the witness during whose testimony the running objection was granted and that the ruling was clearly limited to the facts and circumstances of this case. The Tyler Court of Appeals discussed the general form of the objection, the context of the record surrounding the testimony and the previous objections so that it was clear that the trial court's grant of the requested "running objection was limited to a particular witness". The Tyler Court of Appeals further stated, "[a]ny other analysis of the record would require that we ignore the relationship between Tex.R.Crim. Evid. 103(a)(1) and the "running" ("continuing") objection practice deeply rooted in Texas." *Id.* at 455.

ney can receive the same ruling from the trial judge to preserve error. As long as Rule 52 is satisfied, that is, as long as the running objection constituted a timely objection, stating the specific grounds for the ruling, the movement desired the court to make (if the specific grounds were not apparent from the context of the running objection) then the error should be deemed preserved by an appellate court.

What *Goodman* [*Goodman v. State*, 701 S.W.2d 850 (Tex.Crim.App.1985)] stands for is the proposition that an advocate who lodges a running objection should take pains to make sure it does not encompass too broad a reach of subject matter over too broad a time or over different witnesses. Rule 52(a) must be complied with. But there are situations where a running objection, made with the express permission of the trial judge, not only does so, but does so much more appropriately than a redundant and disruptive (to the orderly flow of trial) series of individual objections.

There are then situations where a running objection is not only adequate to preserve error, but actually desirable.

**6.** Former Art. 40.09, Sec. 6(d)(3), V.A.C.C.P.

**7.** We note that in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990) (Opinion on Rehearing), that the proper objection to an extraneous offense calls for an objection under Rule 404(b) that the evidence has no relevance apart from proving the character of a person in order to show that he acted in conformity therewith; then if the prosecution persuades the trial judge that the evidence has relevancy apart from proving character, a *further* Rule 403 objection must be lodged saying that the probative value is substantially outweighed by the unfair prejudice, undue delay, confusion etc. mentioned in Rule 403. Under this "dual" objection formula, a running objection conceptually does not fit since the Rule 403 objection is only lodged when the Rule 404(b) objection is overruled. Perhaps the solution would be to have two running objections going at the same time, with the second (the Rule 403 objection) being moot where the first (Rule 404(b) objection) is properly sustained. The Rule 52(b) "out of the jury's presence" scenario seems simpler to use with extraneous offense objections, but this is a matter of the trial judge's discretion. Time con-

Additionally, the Texas Rules of Appellate Procedure provide defense counsel with another alternative when seeking to preserve error in the admission of evidence. Rule 52(b), supra.[6] This rule allows defense counsel to lodge a valid objection to *all* the testimony he deems objectionable on a given subject at one time out of the jury's presence, since the rule calls for the trial court to hear his "objections to offered evidence out of the presence of the jury and rule ... that such evidence be admitted ...". Then the evidence can come in before the jury without interruption, yet error in its admission, if any, is preserved.

In this case defense counsel objected only to the first question asked of Scott as to what kind of "job" he had referred to on cross-examination. The record shows there were three pages of questions and answers on the subject and no indication of an objection other than the first objection. Counsel never asked for any kind of "running" objection or a hearing out of the jury's presence so he would not have to constantly object. Defense counsel's initial objection ("that's extraneous"[7]) should have been followed by further objections or a request for a "running" objection.[8] Under established caselaw, the rules of evi-

straints alone might weigh in favor of the more cumbersome dual running objection method.

**8.** In *Brown v. State*, 692 S.W.2d 146, 150 (Tex. App.–Houston [1st Dist.] 1985), *aff'd on other grounds*, 757 S.W.2d 739 (Tex.Crim.App.1988), the Court of Appeals held:

"We are further of the view that any error in the admission of such testimony was waived and/or cured by defense counsel's failure to object to similar testimony later elicited. Although defense counsel did timely object to certain portions of the testimony regarding complainant's emotional injuries when it was first elicited, he did not obtain a running objection to such testimony, and complainant later testified, without objection: that she had attempted suicide twice, the first time a month after the rape; that she was hospitalized both times; and that she had had continuing counseling since the rape. It is defense counsel's responsibility to object every time allegedly inadmissible evidence is offered, and when counsel objects to certain inadmissible testimony, but then permits similar evidence to come in without objection, the complaint is deemed cured." *Id.* at 151.

dence and the rules of appellate procedure, appellant did not preserve error because he did not object to the continued detailed testimony from Scott concerning the armored truck robbery.

The Court of Appeals erred by holding appellant did not need to continue objecting to Scott's testimony about the armored truck robbery. It is clear from the context of this testimony further objection was necessary in some form. Therefore, the State's third ground for review is sustained. The judgment of the Court of Appeals is reversed, and this cause is remanded to that court for consideration of appellant's remaining points of error.

CLINTON, J., concurs.