In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-183 CR


____________________



WILLIE RAMSEY, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 82548






O P I N I O N


 A jury found Willie Ramsey guilty of felony marijuana possession, and assessed his
punishment at ten years' confinement in the Institutional Division of the Texas Department
of Criminal Justice.

 In the two issues, Ramsey contends the trial court erred in admitting two of the
State's exhibits, a firearm and ammunition. Ramsey maintains the exhibits were evidence
of extraneous offenses not alleged in the indictment and that their admission was
prejudicial and likely contributed to his conviction. Ramsey relies on Texas Rules of
Evidence 401, 402, and 404(b). 

 The State does not argue that the exhibits were other than extraneous offense
evidence, but rather contends Ramsey either waived or failed to preserve any error
regarding the introduction of the gun and ammunition as exhibits. (1) We agree.

 "An objection should be made as soon as the ground for objection becomes
apparent." Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). In addition,
a party must object each time inadmissible evidence is offered, or request a running
objection. See Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Any
error is cured where the same evidence comes in elsewhere without objection. Id.

 The vehicle in which Ramsey was riding as a passenger was stopped during a "drug
interdiction" operation. Officers found 5.34 pounds of marijuana in the vehicle. And
wedged between the two front seats of the car, they found a loaded gun.

 In his opening statement, the prosecutor said the case was about marijuana, a gun,
and the dangers associated with drug trafficking. Defense counsel did not object to the
State's opening, but rather countered with an explanation that the gun was not illegal, was
not concealed, but instead was a licensed handgun. Defense counsel further conceded that
Ramsey had possessed marijuana at the time of the stop but asserted the evidence would
show there was no probable cause for the traffic stop and the weight of the marijuana was
not as much as that alleged by the State.

 Gary Porter, an officer assigned to the Jefferson County Narcotics Task Force,
explained the "drug interdiction" work of the task force on Interstate 10 as being its main
job - stopping the flow of illegal narcotics from the Houston area up through the east
coast. Porter testified that weapons often were encountered in the stops. But not often did
the task force officers find loaded guns that could be "grabbed." When the prosecutor
asked whether guns were commonly used by narcotics traffickers, Ramsey's counsel
objected that "[t]here is no gun charge here." The trial court overruled the objection. 
Porter then testified that drug traffickers often carry firearms to protect themselves from
other drug dealers and to protect their money. Ramsey's counsel again objected:

 I'm going to object to the admission of any evidence regarding an extraneous
offense of possession of a firearm or unlawfully carrying a weapon. And .
. . the revolver has been placed on the prosecution's desk in plain view of
the jury and this is going to prejudice the jury regarding some extraneous
offense that the Defendant was never given notice of though we filed formal
motions requesting ten day notice of any extraneous offense.


The trial court overruled the objection. 

 When the video tape of the arrest (but not the audio portion), was being played for
the jury, the following dialogue between the prosecutor and Porter occurred:

 [State's attorney]: Did anyone know about a gun being in the car at this
point? 


 . . . .


 [State's attorney]: . . . My question is: In that four minutes did [Ramsey]
ever indicate to anybody that there was a loaded .38 sitting right next to
him?


 [Porter]: He did not. He did not indicate until they - he was asked.


 . . . .


 [State's attorney]: . . . [Ramsey] is being taken out of the car; it that
correct?


 [Porter]: That's correct.


 [State's attorney]: The gun is still sitting there between the seats; is that
correct?


 [Porter]: Right. 


 . . . .


 [State's attorney]: . . . Are you looking at the gun at that point, Gary?


 [Porter]: I was looking at the point where I had found it. 


 . . . .


 It really concerned me as to where the gun was at. The normal factor, you
know, people won't leave guns right there when they're stopped by the
police. They'll try to, you know, disassociate themselves with them and I
was very concerned my life would have been in danger had [other officers]
not been there. 


 . . . . 


 I think there was a significant chance had I not had some people with me that
my life would have been in danger and they may have used a firearm. 

 

 Defense counsel did not object during this testimony, but when the gun was offered
as an exhibit through Porter's testimony, defense counsel again objected on "extraneous
offense" grounds and was overruled by the trial court. In describing how he found the
gun, Porter, without drawing an objection, explained that the gun was stuck in the crease
between the center console and the driver's seat, and was accessible to both individuals in
the car. 

 When the ammunition was tendered during Porter's testimony, defense counsel
again objected on "extraneous offense" grounds, and was overruled by the trial court. 

Porter further testified, without objection being raised, that part of the danger of his job
was encountering guns, but not often were the guns in the position that this one was in.
Also, the gun was tested and was found capable of firing. 

 John Calloway, an undercover officer with the Texas Department of Public Safety,
was riding with Officer Porter on the evening Ramsey was arrested. Calloway testified
that Officer Tibbits was the officer near the gun when it was discovered. Calloway also
testified that the majority of individuals who are stopped with weapons will try to shove
it down in the seat or put a rag over it, and it is not uncommon for the gun to be loaded.
No objection was made by defense counsel. In cross examination, Calloway was asked
whether he was aware that the narcotics task force was attempting to return the gun to the
Ramsey family. Calloway disavowed such knowledge. 

 Chris Tibbits, an officer with the Texas Department of Public Safety, was also with
Officer Porter on the night of Ramsey's arrest. Defense counsel did not object to any of
Tibbits's testimony on extraneous offense grounds. According to Tibbits, approximately
four minutes into the stop, Tibbits asked Ramsey if he had any weapons in the vehicle. 
Ramsey said he did. Ramsey started to reach for the gun and the officers told him not to
touch it. Tibbits identified the gun tendered as an exhibit as the gun that was in Ramsey's
car. The gun was wedged in between the two front seats. It was loaded. When asked
whether his and Calloway's presence that night assisted Officer Porter, Tibbits further
testified that "there's no doubt in my mind that our presence there that night saved, you
know, a shooting incident - prevented a shooting incident." On cross examination, Tibbits
also disclaimed any knowledge that the task force had offered to return the gun to the
Ramseys.

 While defense counsel objected several times to Porter's testimony on extraneous
offense grounds, he did not request a running objection nor did he make any extraneous
offense objections to the testimony of Calloway and Tibbits. Thus, the error of admitting
the exhibits was cured. See Ethington, 819 S.W.2d at 858. Ramsey's issues are
overruled. Accordingly, we affirm the jury's verdict and sentence.

 AFFIRMED.


 PER CURIAM


Submitted on May 3, 2002 

Opinion Delivered May 8, 2002

Do not publish 


Before Walker, C.J., Burgess, and Gaultney, JJ.
1. Alternatively, the State maintains any error regarding the admission of the exhibits
was harmless because, without objection, the jury heard testimony concerning: the gun,
Ramsey's potential intent to use it, his status as a "drug dealer/trafficker," and his
concession of the crime charged.