Charles Lynn ROBBINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–90–240 CR.

Court of Appeals of Texas, Beaumont.

April 8, 1992.

Will Gray, Houston, for appellant.

Peter C. Speers, Dist. Atty., Conroe, Kathleen Hamilton, Asst. Dist. Atty, Conroe, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

Appellant was convicted of the offense of Aggravated Assault on November 22, 1989, in trial cause No. 89–97–603 CR and was sentenced to eight years imprisonment in the Institutional Division of the Texas Department of Criminal Justice, but was released on shock probation. Robbins' probation was revoked on November 21, 1990. Appellant has filed a frivolous brief regarding the revocation of his probation. This brief is in conformity to prevailing case law and will be discussed at the end of this opinion.

In trial cause No. 90–08–00831, appellant was convicted of the offense of Kidnapping and was sentenced to ten years confinement in the Institutional Division of the Texas Department of Criminal Justice. In trial cause No. 90–08–00832, appellant was convicted of the offense of Aggravated Sexual Assault and was sentenced to 75 years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant pled not guilty to both offenses but was found guilty on each by a jury. The court assessed punishment in both cases.

The evidence shows that the complaining witness, (Complainant) encountered the appellant, (Robbins) late in the evening of July 31, 1990, at a lounge in Conroe, Montgomery County, Texas. Robbins invited Complainant to his house at about 1:30 a.m. (on August 1, 1990,) to which offer she agreed. Complainant, on a motorcycle, followed Robbins and his employee, Gene Buentello, to the appellant's house. Liquor was imbibed, Complainant danced with Robbins; they hugged and kissed, but when Robbins invited Complainant to spend the night with him, she refused. After a conversation between Complainant, Robbins and Buentello, Robbins walked Complainant to her motorcycle again asking her to stay but she continued to refuse. She departed on her motorcycle but within a short time she returned to get directions from Robbins. This occurred at approximately 4:00 a.m.

When Complainant returned, she found Robbins standing in his front yard. She turned the motorcycle off, left it in the street, and walked toward Robbins. She asked him for directions. He did not answer. Instead, he put his arms around her and would not release her. They continued to struggle and Robbins hit Complainant in the face until she fell to the ground. Then Robbins removed her shoes and her underwear, took his shorts off, and proceeded to have sexual intercourse with Complainant for approximately five minutes.

He took her into the house and made her disrobe and get into a shower. After she showered, Robbins threatened her if she

did not cooperate by laying down on the bed with him. She attempted to escape and enlisted the assistance of Buentello, but he told her to shut up and sit down, that Robbins could have her killed. Robbins confirmed that she should listen to Buentello. Robbins then forced her to return to the bedroom and lie down with him. She attempted to escape a second time, but Buentello and Robbins caught her and forced her to return to Robbins' bedroom again. Buentello apparently then dressed and left. Robbins told Complainant that they would give him at least 15 minutes to return. Complainant became apprehensive and fearful for her life and told the appellant that she could not lie down on the bed because the blood from her nose and mouth was running down the back of her throat, choking her. She spent enough time in the bathroom to allow Robbins to fall asleep again. She then called 911, but could not convey the address of Robbins' house. By this time, it was 6:00 a.m. and was beginning to get light outside. She retrieved a sheet, wrapped it around her, and left the house. Upon leaving she saw some workers in the street who called an ambulance for her.

Injuries to Complainant included a broken nose, her lower lip was punctured by her bottom teeth, a blood bruise on her temple, bruises and contusions about her jaw, and a laceration to the upper lip. An emergency room physician testified regarding these injuries. He also stated that he found dirt particles around the entrance to her vagina which was consistent with her having been sexually assaulted in the outdoors on the ground. He found no evidence of injuries which would be consistent with a motorcycle accident.

Buentello confirmed the times, dates, and presence of Complainant at Robbins' house.

One of the workers of whom Complainant had asked for help testified that she had stated having just been raped. A coworker called their dispatcher who called the police. One officer testified that they noted clothing in the yard outside the house and clothing laying around inside the house, which included a bra in the window, and other clothing in the tub and shower.

The State's Exhibits included more than 25 photographs and exhibits which were consistent with Complainant's testimony.

█ In appellant's first point of error, it is contended that there was insufficient evidence to support a conviction of aggravated sexual assault because the essential element of penetration was not proved. In reviewing the evidence to determine the sufficiency thereof, we view it in the light most favorable to the verdict to determine if any rational trier of fact could have found beyond a reasonable doubt the essential element of the case which appellant contends is missing. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Combs v. State,* 643 S.W.2d 709 (Tex.Crim.App.1982). The only element of which the appellant complains in this case is the penetration of the Complainant's sexual organ with the appellant's sexual organ. In direct response to the question, "Did he penetrate your vagina with his penis?", the Complainant answered, "Yes, he did." This testimony standing alone is sufficient evidence to sustain the appellee's position on point of error number one. *See Garcia v. State,* 563 S.W.2d 925, 927 (Tex. Crim.App.1978); *Martinez v. State,* 662 S.W.2d 393, 395 (Tex.App.—Corpus Christi 1983, pet. ref'd). We overrule appellant's point of error one.

█ Appellant's second point of error alleges misconduct by the court at the penalty phase of the trial in permitting four witnesses to testify concerning the commission of extraneous offenses by the appellant. Testimony was elicited from four women who personally knew the appellant and each testified of his having committed violence against them of an assaultive nature. Two of the women also testified that the appellant had restrained them and deprived them of their liberty on several occasions. Each of the offenses were unadjudicated and were committed prior to the offenses made the basis of this appeal.

We hold that the trial court did not abuse its discretion in allowing this testimony regarding prior unadjudicated offenses of a

similar nature to that for which the appellant was on trial. *See Slott v. State of Texas*, 824 S.W.2d 225 (Tex.App.—Beaumont 1992, pet. filed); *Hubbard v. State*, 809 S.W.2d 316 (Tex.App.—Fort Worth 1991, pet. granted); *Gallardo v. State*, 809 S.W.2d 540 (Tex.App.—San Antonio 1991, pet. granted); *Cannon v. State*, 807 S.W.2d 631 (Tex.App.—Houston [14th Dist.] 1991, no pet.); *Hunter v. State*, 805 S.W.2d 918 (Tex.App.—Beaumont 1991, pet. granted); *McMillian v. State*, 799 S.W.2d 311 (Tex.App.—Houston [14th Dist.] 1990, pet. granted); *Huggins v. State*, 795 S.W.2d 909 (Tex.App.—Beaumont 1990, pet. ref'd). We hold under the present facts of this case that the testimony offered during the punishment phase of the trial of the extraneous offenses committed by the appellant was admissible notwithstanding the holding in the cases of *Grunsfeld v. State*, 813 S.W.2d 158 (Tex. App.—Dallas 1991, pet. granted), and *Jolivet v. State*, 811 S.W.2d 706 (Tex.App.—Dallas 1991, pet. granted). We overrule appellant's point of error number two.

■ Point of error number three by the appellant alleges that he was denied the effective assistance of counsel. The Sixth Amendment to our Constitution of the United States gives the right to counsel and according to the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant in a criminal case has a right to "effective assistance of counsel". For the appellant to prevail on this point of error he must show under *Strickland, supra*, that not only trial counsel was deficient, but the said deficiency was such to deprive the appellant of a fair trial. There must be a reasonable probability that, but for the deficient performance, the result of the trial would have been different. *See Rico v. State*, 707 S.W.2d 549 (Tex.Crim.App.1983). The standard of review for effectiveness of counsel at the trial level is also gauged by the totality of the representation of the appellant. *Ex Parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980). Whether the defendant below won or lost his case does not determine effectiveness by itself. *See Ex Parte Cruz*, 739 S.W.2d 53 (Tex.Crim.App. 1987) and *Curtis v. State*, 500 S.W.2d 478 (Tex.Crim.App.1973). It is presumed that trial counsel acted competently and was effective, but the defendant may rebut this presumption to prove ineffectiveness. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

Appellant isolates an ambivalent statement made by the trial court judge during the opening statement of the defense attorney wherein the court stated, "You need to make an opening statement says [sic] you are going to produce evidence that I don't think at this point is likely to be." There was no objection from defense counsel, nor was there any further comment by the Judge in this regard. There was no further reference to the remark, no explanation of the remark, and the statement did nothing to otherwise interrupt the trial proceedings. The opening statement continued and there appears to be, from the remarks in the record between the Judge and the defense attorney, an amicable relationship. This remark by the Judge would not be enough, under these circumstances, to warrant an objection, an instruction to the jury, nor a motion for mistrial.

Appellant further complains that defense counsel called a doctor to the witness stand as a defense witness without a prior interview and conference with the doctor to discuss the nature of the testimony to be elicited. Appellant further complains generally that trial defense counsel did not have "visible mastery of the rules of criminal evidence." Appellant is generally critical of the means and methods his trial counsel utilized, from his cross-examination of State's witnesses to his inability to make proper objections. Appellant refers us to "the totality of the circumstance shown."

We compliment the authors of the brief for the State in their analysis of trial counsel's performance for the appellant, and we utilize the facts they present therein. Defense trial counsel obtained a preferential trial setting for the appellant. He withdrew as counsel representing the co-defendant upon realizing a possible conflict of interest. He went to extraordinary lengths

to obtain a key witness, Gene Buentello, to the point of requesting a warrant for his arrest. He obtained a favorable ruling on part of his motion in limine. While the State presented nine witnesses, the defense counsel cross-examined seven of those witnesses. He made a bill of exceptions during the cross-examination of the complainant and conducted a voir dire examination of the crime scene investigator and another witness. He appears to have been effective and efficient in conducting voir dire examination of the jurors, and in making opening and closing addresses to said jurors. He conducted extensive direct examination of two witnesses for the defense. He made timely and proper objections during the trial. In point of fact, a total of 52 objections were made, 35 having been made by defense trial counsel of which 21 were sustained by the trial court. He approached the bench having lengthy arguments and debates over evidentiary issues and requested various defense issues to be placed in the court's charge. He argued vigorously for changes to the court's charge. He presented two witnesses at the punishment phase and made a closing statement to the court at the punishment hearing.

We find that appellant's contention that assistance of trial counsel proved ineffective has not been proven by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528 (Tex.Crim.App.1985). Appellant has failed to demonstrate that the result of the trial would have been different based upon his allegations. *See Rico v. State,* 707 S.W.2d 549 (Tex.Crim.App.1983). Appellant has likewise failed to show that any deficient performance prejudiced his defense. *Boyd v. State,* 811 S.W.2d 105, 109 (Tex.Crim.App.1991); *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim.App.1986). Absent a showing that counsel's performance was deficient and the deficiency prejudiced appellant's defense, we cannot conclude that the appellant's conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064. The method for proving the

prejudice component has been spelled out as follows:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068. We overrule appellant's point of error number three.

### *Motion to Revoke Probation*

Prior to the appellant's trial for the offenses of Kidnapping and Aggravated Assault made the subject of this appeal, the appellant pleaded guilty to the offense of Aggravated Assault on November 22, 1989, in cause No. 89–07–00603–CR. He was sentenced to eight years confinement in the Institutional Division of the Texas Department of Criminal Justice and was released in February of 1990, on shock probation. On August 8, 1990, the State filed a motion to revoke probation which was amended on August 9, 1990, said motion being based on the appellant's commission of the aggravated assault and the commission of the kidnapping charge before this Court, failure to pay supervisory fees, and based upon positive test results for alcohol and marijuana cannabinoids.

On November 21, 1990, after hearing, the trial court entered an order revoking appellant's probation and sentenced him to eight years confinement in the Institutional Division of the Texas Department of Criminal Justice.

The appellant's attorney, in a response pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), concedes in his brief that the evidence during the hearing on the motion to revoke appellant's probation was sufficient to prove by a preponderance of the evidence that the appellant had committed the offense of Kidnapping. The appellant further concedes that the trial court did not abuse its discretion in its findings, and concludes that there are no arguable points of error as to these issues.

The Court finds that appellant's counsel has filed a brief in compliance with *Anders v. California, supra,* and *High v. State,* 573 S.W.2d 807 (Tex.Crim.App.1978).

After reviewing the statement of facts and the transcript in the revocation hearing, the Court is in agreement with appellant's attorney that there are no arguable points of error. Appellant's counsel's brief contains a copy of a letter in which he notified appellant that he had filed a "frivolous" brief and informed appellant of his right to obtain the record and to file a pro se brief. As of this date, we have received no brief from the appellant. We have made a full examination of the entire record in the revocation hearing in question and find no error requiring reversal thereof. We, therefore, find the appeal from the revocation hearing without merit and we affirm said revocation. We affirm the judgment of the trial court below.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent to the majority's disposition of the extraneous offense point of error. I believe the introduction was error, *see Huggins v. State,* 795 S.W.2d 909 (Tex.App.—Beaumont 1990, pet. ref'd) (concurring opinion) and I cannot determine beyond a reasonable doubt that the evidence made no contribution to an assessment of the punishment, *see Hunter v. State,* 805 S.W.2d 918 (Tex.App.—Beaumont 1991, pet. granted) (dissenting opinion). Furthermore, I believe Judge Onion's analysis of TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon Supp.1992) in *Grunsfeld v. State,* 813 S.W.2d 158 (Tex.App.—Dallas 1991, pet. granted), is well reasoned and correct. *See also Slott v. State,* 824 S.W.2d 225 (Tex.App.—Beaumont 1992, pet. filed). Since the majority feels otherwise, I respectfully dissent.