Charles Lynn ROBBINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–90–240 CR.

Court of Appeals of Texas,
Beaumont.

May 26, 1993.

Will Gray, Houston, for appellant.

Daniel Rice, Dist. Atty., Sharron S. Davidson, Kathleen Hamilton, Asst. Dist. Attys., Conroe, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

**OPINION ON REMAND**

BROOKSHIRE, Justice.

In trial cause no. 90–08–00831–CR appellant, Charles Lynn Robbins, was convicted of the offense of kidnapping and was sentenced to 10 years confinement in the Institutional Division of the Texas Department of Criminal Justice. In trial cause no. 90–08–00832–CR appellant was convicted of the offense of aggravated sexual assault and was sentenced to 75 years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant pleaded not guilty to both offenses but was found guilty on each by a jury. The court assessed punishment in both cases. These convictions were affirmed by this Court in *Robbins v. State,* 827 S.W.2d 626 (Tex. App.—Beaumont 1992).[1]

---

1. This Court also affirmed a revocation of appellant's probation for aggravated assault in trial cause no. 89–97–603–CR. All three causes had

been consolidated under no. 09–90–240–CR. No issue as to extraneous offenses being admitted at the punishment stage was raised concerning

The appellant, Charles Lynn Robbins, filed a petition for discretionary review on both cases in the Texas Court of Criminal Appeals which was granted to determine whether unadjudicated acts of misconduct are admissible at the punishment phase of a non-capital trial under TEX.CODE CRIM. PROC. art. 37.07(3)(a) (Vernon Supp.1993) after the legislative amendment thereto in 1989.

The Court of Criminal Appeals held that since this Court's opinion was issued before the decision of the Court of Criminal Appeals in *Grunsfeld v. State,* 843 S.W.2d 521 (Tex.Cr.App.1992) the judgment of this Court would be reversed. *Robbins v. State,* 843 S.W.2d 570 (Tex.Crim.App.1992). The Court of Criminal Appeals then remanded the cause to this Court for reconsideration of our prior judgment in light of the *Grunsfeld* decision.

The issue before the Texas Court of Criminal Appeals in *Grunsfeld* was to determine whether Article 37.07(3)(a) as amended, allows admission of unadjudicated extraneous offense evidence in the punishment phase of a trial on a non-capital offense.

In *Grunsfeld* as in *Hunter v. State,* (Tex.App.—Fort Worth) (unpub.) (decided with, and as a companion case to *Grunsfeld*) each defendant was charged with the offense of aggravated sexual assault on a female and in each case at the punishment phase, testimony was admitted that the respective defendant had sexually assaulted other individuals but there was no final conviction of said assaults. Timely objections to that testimony were lodged by each defendant under Article 37.07(3)(a) as being inadmissible. In each case the defendants' mother testified that the defendant had not been previously convicted of a felony, thus establishing his eligibility for probation.

The relevant portion of Article 37.07(3)(a) as amended provides as follows:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged. (emphasis on portion added by amendment).

After the Court of Criminal Appeals in *Grunsfeld* examined the legislative intent and history of the amendment in question and the term "prior criminal record," the court found evidence of extraneous unadjudicated offenses was improperly admitted. After finding error, the court noted that it would be reversible unless it could be determined beyond a reasonable doubt that the error made no contribution to the assessment of punishment. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App.1989); TEX. R.APP.P. 81(b)2. The Court of Criminal Appeals then affirmed the opinion of the Dallas Court of Appeals which had reversed the trial court in *Grunsfeld,* and reversed the opinion of the Fort Worth Court of Appeals in *Jerred J. Hunter* which had affirmed the trial court and remanded both cases to their respective trial courts for proceedings consistent with TEX. CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1993).

In the case before us, the evidence shows that the complaining witness, (Complainant) encountered the appellant, (Robbins) late in the evening of July 31, 1990, at a lounge in Conroe, Montgomery County. Robbins invited Complainant to his house at about 1:30 a.m. (on August 1, 1990,) to which offer she agreed. Complainant, on a motorcycle, followed Robbins and his employee, Gene Buentello, to the appellant's house. Liquor was imbibed. Complainant danced with Robbins; they hugged and kissed, but when Robbins invited Complainant to spend the night with him, she re-

---

the revocation and petition for discretionary review by the Texas Court of Criminal Appeals

was refused; therefore, that case is not before this Court for review.

fused. After a conversation between Complainant, Robbins and Buentello, Robbins walked Complainant to her motorcycle again asking her to stay but she continued to refuse. She departed on her motorcycle but within a short time she returned to get directions from Robbins. This occurred at approximately 4:00 a.m.

When Complainant returned, she found Robbins standing in his front yard. She turned the motorcycle off, left it in the street, and walked toward Robbins. She asked him for directions. He did not answer. Instead, he put his arms around her and would not release her. They continued to struggle and Robbins hit Complainant in the face until she fell to the ground. Then Robbins removed her shoes and her underwear, took his shorts off, and proceeded to have sexual intercourse with Complainant for approximately five minutes.

He then took her into the house and made her disrobe and get into a shower. After she showered, Robbins threatened her if she did not cooperate by laying down on the bed with him. She attempted to escape and enlisted the assistance of Buentello, but he told her to shut up and sit down, that Robbins could have her killed. Robbins confirmed that she should listen to Buentello. Robbins then forced her to return to the bedroom and lie down with him. She attempted to escape a second time, but Buentello and Robbins caught her and forced her to return to Robbins' bedroom again. Buentello apparently then dressed and left. Robbins told Complainant that they would give him at least 15 minutes to return. Complainant became apprehensive and fearful for her life and told the appellant that she could not lie down on the bed because the blood from her nose and mouth was running down the back of her throat, choking her. She spent enough time in the bathroom to allow Robbins to fall asleep again. She then called 911, but could not convey the address of Robbins' house. By this time, it was 6:00 a.m. and was beginning to get light outside. She retrieved a sheet, wrapped it around her, and left the house. Upon leaving she saw some workers in the street who called an ambulance for her.

Injuries to Complainant included a broken nose, her lower lip was punctured by her bottom teeth, a blood bruise on her temple, bruises and contusions about her jaw, and a laceration to the upper lip. An emergency room physician testified regarding these injuries. He also stated that he found dirt particles around the entrance to her vagina which was consistent with her having been sexually assaulted in the outdoors on the ground. He found no evidence of injuries which would be consistent with a motorcycle accident.

Buentello confirmed the times, dates, and presence of Complainant at Robbins' house.

One of the workers of whom Complainant had asked for help testified that she had stated that she had just been raped. A co-worker called their dispatcher who called the police. One officer testified that he noted clothing in the yard outside the house and clothing laying around inside the house, which included a bra in the window, and other clothing in the tub and shower.

The State's Exhibits included more than 25 photographs and exhibits which were consistent with Complainant's testimony.

There are several factors which distinguish the case before us from the *Grunsfeld* decision. In *Grunsfeld,* and the companion case of *Hunter,* neither appellant had any prior felony convictions and each applied for probation. In light of the prejudicial nature of the extraneous offense evidence, the Court of Criminal Appeals held that the jury was tainted by hearing the extraneous offense evidence. In the case before us the appellant has a history of prior felony convictions. Another distinguishing aspect is that the jury assessed punishment in *Grunsfeld* whereas in the case before us the trial court assessed appellant's punishment after findings of guilt by the jury.

During the punishment phase, it was shown that Charles Lynn Robbins had been found guilty of misdemeanor assault in 1987; in 1989 he pleaded guilty to driving while intoxicated, and also in 1989 he was indicted for the felony offense of attempted murder but pleaded guilty to and was con-

victed of the lesser included felony offense of aggravated assault.

T.S., a female, testified that she had lived with appellant for approximately two months and there were instances of violence committed upon her by the appellant during this time. During 1985, on one occasion the appellant hit her in the face and broke her nose. He had also at that time beat her head on a concrete driveway and after T.S. enlisted the aid of appellant's parents, he became irate and beat on his mother. In fact, appellant had hit T.S. so many times during their relationship that she could not give a number. Appellant objected to this testimony at the outset under TEX.R.CRIM.EVID. 608 relating to prior acts of misconduct. The objection was overruled by the court. No running objection was tendered to this evidence nor to any similar type of testimony. *See Ethington v. State*, 819 S.W.2d 854 (Tex.Crim. App.1991). Rule 608 is directed toward attacking the credibility of a witness. *Ramirez v. State*, 830 S.W.2d 827 (Tex.App.— Corpus Christi 1992, no pet.). This objection did not preserve *Grunsfeld* error for review on appeal. TEX.R.APP.P. 52.

S.H. had been married to appellant for approximately six months and on one occasion after a fight broke out, appellant's mother told S.H. to hide outside, but appellant accosted both of them and attacked both women. S.H. testified that appellant was beating his mother so she tried to intercede. She testified she was beaten many times by appellant and described their sexual relationship during the marriage as "rape." No objection was made to this testimony.

I.N., a school teacher, also testified that she was once engaged to the appellant and lived with him approximately six weeks. She testified that she moved out because he was so violent, that he had kicked her in her kidneys, bruised her head; he had beat her head against the border of a waterbed and in fact she had sustained bruises in different places on her body. No objection was made to this testimony.

P.H., S.H.'s mother, went to the appellant's home to retrieve S.H. Appellant grabbed S.H. by the throat and tried to shove P.H., her mother, out the door. P.H. eventually was able to leave but she bruised her back and her arm in the process. Appellant lodged no objection to this testimony.

The appellant called one Walter Quijano, a clinical psychologist, employed on a contract basis for Montgomery County Adult Probation Department who testified that he had worked with appellant, Charles Lynn Robbins. He testified that the appellant was initially referred to him for help with his problems with assault and anger which eventually turned into assisting him with his addictions. Dr. Quijano noted a relationship between his substance abuse and his assaultive behavior, noting a correlation with abuse of alcohol, valium, and marijuana.

The doctor also noted that the use of alcohol, valium, and/or marijuana would reduce appellant's inhibitions and sense of control and made assaults more probable. The appellant initially did well in abstaining from alcohol, but Dr. Quijano discovered he was on valium which is contra-indicated in assaultive people. Dr. Quijano also testified that these substances can trigger "aggressor substance induced assault." In the case of the appellant it was extremely difficult to treat him over the long run because initial abstention from alcohol by the appellant was replaced by the use of marijuana. The doctor stated it "is difficult to understand if one were already on probation." It was the doctor's opinion that if the appellant could abstain from alcohol, valium, and marijuana, then the likelihood that "the assaultive conduct that has gotten him here today" would be reduced and even minimized if abstention were assured. Thus the defense witness introduced evidence of the extraneous offenses. It was also the doctor's opinion that if the addiction was controlled, appellant would be a good candidate for rehabilitation, and that the Texas Department of Corrections has the proper facilities. But the doctor could not predict how long it would take to actually rehabilitate the appellant. The doctor opined that being in the penitentiary and receiving psy-

chological treatment would be the most beneficial things that could happen to appellant.

On cross-examination by the State's attorney, Dr. Quijano testified that the appellant was referred to him in September of 1989 by the defense lawyer and then later a referral came through the probation process. The doctor stated that September of 1989, was "before he went to court for I think the third or second or third offense. He was already on probation, and there was another charge, and then before he went to court, he was referred to me." The doctor testified that his findings were based upon the history given to him by the appellant and that appellant had assaulted three or four other women. Significant and crucial is the factor that the appellant engaged the doctor initially and called the doctor to the stand. The doctor counseled the appellant about any assaults, and whether appellant was sober. The doctor discovered that alcohol or some other substance was always involved.

After appellant relapsed, the doctor called in one Dr. Davis to develop a stricter management plan. Dr. Quijano also testified that if the appellant had not been under the influence of alcohol or drugs at the time of the offense for which he was on trial, then an indication would exist that appellant was exhibiting socio-pathic behavior—being a person's propensity to repeat violations of the law, violations of the rights of others, inability to learn from experience, and inability to learn from past punishments. Socio-pathic behavior would include an inability to feel remorse over one's actions, but if the remorse is there, it is almost always as a result of being caught. But that type of remorse does not lead to behavior change. The doctor also testified that the incident for which he was convicted was not related to him by the appellant. This concealment meant that the prognosis was not good for the appellant. The doctor opined that appellant apparently was continuing to engage in the activity for which he was being treated "[s]o there is something ticking in there that is—must be very difficult to control because the treatment, psychological treat-

ment, medical treatment, the threats of prison do not seem to be sufficient to control the behavior." This is expert evidence from the defense's doctor.

■ Assuming, arguendo, that the objection to the testimony of S.H. was legally sufficient, the same evidence was tendered to the court by the appellant through the testimony of Dr. Quijano, the witness for the defense. Dr. Quijano testified that the appellant had a history of assaultive type behavior on women and stated that there were at least four instances given him by the appellant. It is settled law that any error in admission of evidence is cured when the same evidence comes in elsewhere without objection; defense counsel must object every time allegedly inadmissible evidence is offered. *Hudson v. State*, 675 S.W.2d 507 (Tex.Crim.App.1984). There are two exceptions to the requirement for a contemporaneous objection, the first being the running objection. *Ethington v. State*, 819 S.W.2d 854 (Tex.Crim. App.1991). The other exception allows defense counsel to lodge a valid objection to all testimony he deems objectional at one time out of the jury's presence. *Ethington*, 819 S.W.2d at 858. The appellant did not request a running objection from the Court nor did appellant request an in limine type hearing.

■ Appellant's brief is directed toward the single issue of the trial court's having allowed evidence of unadjudicated offenses before the court during the punishment phase of trial. Appellant's brief is grounded on the decision of *Grunsfeld*, 843 S.W.2d at 521, exclusively, and the issue of the trial court having admitted in a bench proceeding evidence of the extraneous offenses. We have noted that appellant did not preserve any error at the trial court level when the first witness proceeded to testify about an extraneous offense. No further objections were lodged against the remaining three witnesses who testified regarding other extraneous offenses. We find that appellant did not preserve error at the trial court level; therefore, this Court has nothing to review. Any error present-

ed at trial must be accompanied with a timely and specific objection, and the objection at trial which differs from the complaint on appeal preserves nothing for review. *Sterling v. State*, 800 S.W.2d 513 (Tex.Crim.App.1990). Dr. Quijano's extensive, detailed testimony was proffered by the defense. Also unadjudicated extraneous offense testimony was given by three witnesses without objection from the appellant. Hence, waiver resulted. We will affirm the conviction and sentence of the trial court below.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result. I write only to clarify my previous position, *Robbins*, 827 S.W.2d at 631. In that dissent, I urged error and then could not, beyond a reasonable doubt, find harmless error.

Obviously the situation has changed. Now the court has found no error because the proper objection was not made to the evidence. Had the majority reached this conclusion originally, this remand would not have been required. Consequently, I concur.