IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-178-CR




DONNIE RAY HOODYE,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT



NO. 7594, HONORABLE H.R. TOWSLEE, JUDGE PRESIDING


 





PER CURIAM

 A jury found appellant guilty of forgery. Tex. Penal Code Ann. § 32.21 (West
1989 & Supp. 1993). The district court assessed punishment, enhanced by two previous felony
convictions, at imprisonment for twenty-five years.

 Appellant contends in his first point of error that the court erred by admitting
evidence of extraneous offenses when there was no proof that he was the perpetrator of those
offenses. In his second point of error, appellant contends that the probative value of the
extraneous offenses was outweighed by their unfair prejudice. 



The Charged Offense 


 In July 1991, checkbooks belonging to Benton Eskew were stolen from a house in
Bastrop. The accounts for which these checks were printed had been closed before the theft. On
July 18, one of the stolen checks was cashed by the clerk at a small Bastrop grocery store. The
check purported to be signed by Eskew and authorized payment of $50 to appellant, who endorsed
it in the clerk's presence. The check bore a notation that it was in payment for "mech," and
appellant told the clerk that he had been given the check after he did some work on Eskew's car. 
Eskew testified that he did not know appellant, did not hire him to work on his car, and did not
sign the check in question.



The Extraneous Conduct Evidence


 Ed Salmela's Testimony. Bastrop police officer Ed Salmela investigated the
charged offense. During his testimony, he was questioned by the prosecutor as follows:



Q. Now before we come back and talk about that actual transaction that we're
here for, let me get some other things at least talked about in brief. Now what I'm
going to ask you about is to give the jury some sort of background about whether
or not there has been indeed more than one forgery that's taken place in Bastrop
County, and what I'm talking about here are the activities of completely separate
individuals from this defendant.


 Okay, so just a general question, have you worked four forgeries along about
that same time in this county?


A. Yes, sir, I have.


Q. Okay. And just in general, do those forgeries appear to be related, and by
that I mean are there some common characteristics of those forgeries?


A. Yes, sir.


MR. DUCLOUX [Defense counsel]: Objection, your Honor, relevancy.


MR. SANDERSON [Prosecutor]: Your Honor, we're trying to, obviously,
establish --


THE COURT: I'll overrule the objection.



The officer went on to testify, without further objection, that in each of the forgery cases he had
investigated, the forged check had been made payable to the person who presented the check for
payment, the payee had properly identified himself, and the endorsement was in handwriting
different from that on the face of the check. The latter fact led the officer to believe that more
than one person was involved in the criminal activity.

 The prosecutor continued to question the officer about the other forgeries, prompting
appellant's next objection:



Q. Is Mr. Eskew the only person who had their checks stolen and had those
checks forged?


A. No.


Q. Within this forgery ring in which you have been working?


A. No, no. No, sir, I have other checks also.


Q. Okay, and who else do we have besides Benton Eskew?


A. I have Gladys Aldrich. Ms. Aldrich was basically done the same way, she
was placed into a nursing home within the city limits of Bastrop and, again, she
had her checkbooks and checks at her house and someone broke into her residence
and stole approximately a box of checks.


MR. DUCLOUX: I need to object, your Honor, I'm not sure exactly what the
idea is here but this is highly inflammatory to the defendant and it's hard for him
to defend himself against every forgery that's ever taken place in the County of
Bastrop.


MR. SANDERSON: Your Honor, we're not making that allegation.


THE COURT: Pardon me?


MR. SANDERSON: We're not making that allegation that this defendant is in any
way involved in these other forgeries, all we're trying to do is establish his link
with this ring of forgeries which occurred all at the same time, all by people who
knew one another, and they were all done in the same way. And there was only
three -- we will show three or four, perhaps, different victims. And by "victims"
I mean persons who has had their checkbooks stolen.


THE COURT: Are you offering it to prove intent?


MR. SANDERSON: To prove intent and knowledge.


THE COURT: Do you want to comment on that?


MR. DUCLOUX: Your Honor, there hasn't been any evidence put on by the
defendant to effect the rebutting of -- there hasn't been any defense of the theory
of "no intent" at this time.


THE COURT: I'll overrule the objection, you may go forward with the evidence.



The officer went on to testify, in answer to questions by the prosecutor, that fifteen checks stolen
from Gladys Aldrich had been forged and passed, that one check stolen from Austin Trailer Sales
and been forged and passed, and that two checks stolen from Earnest Caro had been forged and
passed. Salmela named ten people other than appellant who he believed were involved in this
"forgery ring," and described the status of the various charges brought against them. Two of
these persons, Verlie Davis and Dondus Green (the latter man believed by Salmela to be the "ring
leader") had criminal records which the officer related. The officer testified that these individuals
had passed the forged checks at numerous locations in Bastrop beginning in March 1991. In each
instance, the forged check had been made payable to the wrongdoer, who in turn made no effort
to disguise his or her identity.

 Except as quoted above, appellant voiced no pertinent objections to Salmela's
testimony. Appellant did object when the State offered in evidence exhibits five, six, and seven,
large sheets of paper on which the prosecutor wrote the names of the victims and suspects as the
officer testified. Appellant urged that the exhibits were irrelevant, inflammatory, and evidence
of extraneous offenses. See Tex. R. Crim. Evid. 402, 403, 404. These objections were
overruled.

 Gordon Lunsford's Testimony. Department of Public Safety trooper Gordon
Lunsford testified that, in August 1991, he went to a Bastrop grocery store in response to a report
that Verlie Davis, a man for whom there was an outstanding arrest warrant, was attempting to
pass a forged check. Lunsford arrested Davis and seized the check. The check, for $150, was
drawn on another account belonging to Benton Eskew, was made payable to Davis, and was
purportedly signed by Eskew. Like the check passed earlier by appellant, this check bore a
notation that it was in payment for "mech." Although Eskew was not shown this check and did
not expressly state that it was a forgery, he did testify that he did not write any check to Verlie
Davis. The jury could reasonably infer from the circumstances that this check was another of the
checks stolen from Eskew.

 At the time of his arrest, Davis had two other checks belonging to Eskew, both for
the same account as the check he had attempted to pass. One of these checks was blank, the other
was made out for $160 payable to Larry Brown, was purportedly signed by Eskew, and bore the
notation that it was for "mech." As with the check Davis attempted to pass, Eskew did not
expressly identify either of these checks as among those stolen from him, but he did testify that
he had never written a check to Larry Brown. Again, the jury could reasonably infer from the
circumstances that these checks were among those stolen from Eskew.

 Lunsford testified that Davis had driven to the grocery store in a car with two other
persons. One of these persons was appellant, who waited in the car as Davis attempted to pass
the forged check. Knowing that an arrest warrant had also been issued for appellant, Lunsford
arrested him after taking Davis into custody.

 Appellant did not object to Lunsford's testimony describing Davis's attempt to pass
Eskew's check and Davis's possession of the other checks belonging to Eskew. Appellant
objected only to the admission of the checks themselves in evidence, asserting that the exhibits
were irrelevant and that any relevance they might have was outweighed by their unfair prejudice. 
See Tex. R. Crim. Evid. 402, 403. These objections were overruled.



Discussion 


 Forgery is not a strict liability offense. In order to convict appellant, the State was
required to prove that he passed the forged check with intent to defraud another. This, in turn,
required the State to prove that appellant knew the check was forged. Pfleging v. State, 572
S.W.2d 517, 519 (Tex. Crim. App. 1978); Stuebgen v. State, 547 S.W.2d 29, 32 (Tex. Crim.
App. 1977). The check in question was made payable to appellant and appellant did not
misrepresent himself to the clerk to whom he presented the check. There is no evidence that
appellant stole the checks from Eskew or that appellant signed Eskew's name to the check. The
State argues that, under the circumstances, evidence that appellant was a member of a "forgery
ring" operating in Bastrop was admissible to prove appellant knew the check he passed was
forged. Whether the challenged evidence in this cause in fact demonstrated the existence of such
a ring and appellant's involvement in it, or was otherwise admissible to prove appellant's intent
to defraud, is a question we need not decide, because appellant failed to preserve his points of
error for review.

 Error in the admission of evidence must be preserved by timely objection at trial. 
Tex. R. App. P. 52(a); Tex. R. Crim. Evid. 103(a)(1). This means that a party must either object
each time inadmissible evidence is offered, obtain a "running objection," or object outside the
jury's presence in the manner prescribed by rule 52(b). Ethington v. State, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991). Appellant did none of these things. After voicing the two early
objections quoted above, appellant made no further objection to Salmela's testimony. Appellant
never objected to Lunsford's testimony. Although appellant objected to the admission of several
exhibits, the substance of the exhibits had been testified to without objection before the exhibits
were offered in evidence. Any error in the admission of evidence is cured if the same evidence
comes in elsewhere without objection. Id. Points of error one and two are overruled.

 The judgment of conviction is affirmed.



[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed:  December 23, 1992

[Do Not Publish]