COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

EMILIO GAYTAN,                                              )

                                                                              )               No.  08-01-00459-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
384th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20000D01017)

                                                                              )

 

 

O
P I N I O N

 

Emilio Gaytan appeals his conviction for the offense of burglary
of a habitation with intent to commit sexual assault, a first degree
felony.  See Tex.Pen.Code Ann. '
30.02 (a), (d) (Vernon 2003).  The jury
found Appellant guilty of the offense as charged in the indictment and assessed
punishment at 6 years=
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.  Appellant raises two issues for
review:  whether the trial court abused
its discretion in (1) admitting the victim=s
cellular telephone billing statement over his hearsay objection; and (2)
excluding proffered defense witness testimony concerning the victim=s conduct.  We affirm. 








On December 31,
1999, Appellant=s mother
held a New Year=s Eve
party at her house.  Among the party
guests were Appellant, several of Appellant=s
relatives, M.F. (the victim), and Luis Martinez, M.F.=s date for the party and fellow
co-worker of Appellant and M.F. at the El Paso Housing Authority.  At trial, Mr. Martinez testified that he
arrived at the party around 8:30 in the evening.  He observed M.F. consume between five to
seven alcoholic drinks while at the party. 
Mr. Martinez stated that M.F. become intoxicated and acted Asilly@
with slurred speech.  He recalled leaving
around 1 a.m., while M.F. remained at the party.

M.F. testified
that she arrived at the New Year=s
Eve party at Appellant=s
mother=s house
around 7:30 in the evening on December 31, 1999 and had four or five drinks at
the party.  Around 3:30 a.m. on January
1, 2000, Appellant and his brother-in-law approached M.F. and told her that
they were going to take her home.  M.F.
had thought she was going to stay the night because Appellant=s mother had told her that she could
use the extra bedroom.  M.F. told them
fine and handed them her car keys because she had been drinking and did not
want to risk a DWI [driving while intoxicated offense].  M.F. got in her car with Appellant and he
drove her home while Appellant=s
brother-in-law, Rene, followed them in Appellant=s
fiancee=s
car.  They dropped M.F. off at her house
and she entered it and locked the door. 
M.F. saw Appellant walk to the other car, get in it, and drive off with
his brother-in-law.  M.F. testified that
no one had to carry her to the door, she was not stumbling or falling all over
herself, and was able to walk sufficiently.








When M.F. entered
her house, she hung her keys on a key hanger, went to her bedroom, and fell
asleep.  She was awakened to find
Appellant on top of her.  M.F. testified
that she was face down on the bed and Appellant was having sex with her.  M.F. was wearing only a bra and underwear,
which Appellant had pulled down to her knees. 
M.F. knew it was Appellant because she turned around and saw him.  M.F. asked him what he was doing and he would
not answer her.  M.F. asked Appellant to
stop, but he did not.  M.F. recalled that
Appellant was pushing her up against the bed and caused her to hit her head on
the bed=s
headboard.  Appellant then rolled over
off of M.F., got up, and put on his clothes. 
M.F. laid in her bed and started to cry.  M.F. then heard a noise in the living
room.  M.F. thought it was Appellant
going through her purse looking for the house key since the front door was
locked with a deadbolt.  M.F. stated that
Appellant then asked her if he could leave the house with the door staying
locked.  M.F. told him to go out the way
he came in, but he told her he could not. 
M.F. got up and put on her robe. 
She went into the living room and got her keys.  M.F. told Appellant to get the hell out of
her house and let him out through the front door.  M.F. could not find her cell phone and asked
Appellant where it was.  The cell phone
is M.F.=s
only telephone.  Appellant told M.F. that
he had been trying to call her on the phone without answer.  M.F. told him to look in her car for the cell
phone.  M.F.=s car has keyless entry so she opened
her car door from the doorway of her house. 
Appellant got M.F.=s
phone out of her car and brought it to her. 
Appellant then left M.F.=s
house.








Initially, M.F.
did not tell anyone about what had happened because she was embarrassed.  The next day, a Sunday, M.F. noticed that the
house felt cold and found that one of windows in her house was almost all the
way open.  At work on Monday, Appellant
approached M.F. at her desk.  He threw a
CD case at M.F. and told her she left it at the party.  M.F. yelled at Appellant in front of their
co-workers.  Soon after, M.F. confided in
Deborah Mendoza, a co-worker, and told Ms. Mendoza what had happened to
her.  M.F. later told Appellant=s supervisor as well.  M.F. reported the incident to the police the
following Saturday.  M.F. decided to go
to the police because she was afraid Appellant or
someone else would do it again and she did not want it to happen again.  M.F. also testified that Appellant did not
have consent to enter her home that night nor did she give him consent to have
sex with her.  

Detective Antonio
Gutierrez of the El Paso Police Department testified that he investigated the
alleged sexual assault case against Appellant. 
Detective Gutierrez met with Appellant on January 14, 2000.  After being advised of his Miranda
rights, Appellant gave a voluntary statement. 
In his statement, Appellant stated that he had a party on New Year=s Eve, December 31, 1999, at his mother=s house.  Among other friends, M.F., a friend from work
was there.  According to Appellant, M.F.
got very drunk as they all did that night. 
Around 3 a.m., Appellant=s
fiancee Isabel Rodriguez took M.F. home.  Appellant=s
friend Tony Aguilar and his wife, Anel Quintero,
followed them so that they could bring Ms. Rodriguez back.  Appellant stated that M.F. called him around
3:30 a.m. and told him that she felt sick. 
Appellant decided to go to M.F.=s house to check up on her because he
was concerned for her safety.  While he
was driving to her house, Appellant kept calling M.F. on the phone, but she
would not answer.








When Appellant
arrived at M.F.=s
house, she still was not answering her cell phone.  Appellant stated that he went around the
house and found a window that was slightly open.  He opened the window and yelled for M.F., but
she did not answer.  He could hear the
shower running.  Appellant crawled
through the window and went into M.F.=s bedroom.  M.F. was awake and Appellant told her that he
was going to turn off the shower. 
Appellant recalled that M.F. was under the sheets and wearing only a bra
and panties.  They were talking and
Appellant told M.F. he was there for her. 
M.F. asked Appellant to hold her because she was cold and Appellant
hugged her and started patting her on the head. 
Appellant did not remember the exact details because he was drunk at the
time, but he did remember that he took off his pants and M.F. took off her own
panties.  Appellant had intercourse with
M.F., but did not remember ejaculating. 
Appellant remembered that M.F. suddenly got mad at him and started
yelling, telling him to leave.

Appellant stated
that he could not leave the house because the front door was locked.  Appellant had to ask M.F. three times to
unlock the door.  Appellant got in his
car, but M.F. yelled at him, asking him about her phone.  They figured out that it was in her car and
M.F. unlocked her car using the keyless remote and Appellant retrieved the
phone for her.  Appellant left M.F.=s
home around 5:30 a.m. and drove home.

During Appellant=s case-in-chief, he called several
witnesses to testify about the events leading up to the alleged incident.  Jennifer Huerta, Appellant=s sister, testified that neither she
nor her husband Rene Huerta took M.F. home that night.  Mrs. Huerta stated that M.F. wanted to stay
overnight, but there was no need for her to stay because a lot of them were not
drinking that night and could drive her home. 
Mrs. Huerta recalled that both M.F. and Appellant were intoxicated.  Rene Huerta, Appellant=s
brother-in-law, testified that he left the party with his wife.








Appellant also
called Antonio Aguilar to testify.  Mr.
Aguilar was formerly employed with the El Paso County Sheriff=s Department and was now working with
the U.S. Border Patrol.  Mr. Aguilar
stated that he and Appellant were not personal friends, but Appellant was his
wife=s best
friend=s
brother.  Mr. Aguilar went to the party
that night around 1 a.m. to pick up his wife, Anel
Aguilar.  They left around 1:50 in the
morning and took M.F. home.  Mr. Aguilar
testified that towards the end of the night, M.F. was Aa
little crazy,@ hanging
all over him and Mr. Huerta.  Mr. Aguilar
recalled that his wife and Appellant=s
sister got upset and told M.F. to go home. 
Mr. Aguilar did not want M.F. to drive on her own because she was
drunk, so he drove M.F. home in her car, stopping first to drop off his wife.  Isabel Rodriguez, Appellant=s fiancee/wife
followed them in Mr. Aguilar=s
car.  When they arrived at M.F.=s
house, Mr. Aguilar got M.F. out of the car and assisted her in walking to her
house.  Mr. Aguilar recalled opening the
front door with M.F.=s
keys.  He let M.F. in and sat her
down.  Mr. Aguilar stood at the doorway and
told M.F. to lock her door.  He testified
that he remained at the house for about a minute and a half and was positive
that he gave M.F. a ride that night.  Ms.
Rodriguez was called as a rebuttal witness and testified that Mr. Aguilar drove
M.F. home, while she followed them in Mr. Aguilar=s
car.

The jury found
Appellant guilty of the charged offense and assessed punishment at six years= imprisonment.  The trial court sentenced Appellant in
accordance with the jury=s
verdict.  Appellant filed a motion for
new trial, which was overruled by operation of law.  Appellant now timely appeals his conviction.

DISCUSSION

Admissibility
of Cellular Telephone Billing Statement








In Issue One,
Appellant argues that the trial court abused its discretion in admitting State=s Exhibit Three, M.F.=s billing statement for her cellular
telephone, over his objection that the exhibit did not fall within the business
records exception to the hearsay rule. 
At trial, Appellant=s
counsel asserted that the billing statement, in which incoming and outgoing
calls from December 25, 1999 to December 29, 1999 and from January 31, 2000 to
February 1, 2000  had been redacted, was
untrustworthy and hearsay.  The State
argued that the billing statement was admissible as a business record because
it was a self-authenticating document with an affidavit attached and the State
had met its notice requirements under Rule 903. 
The trial court admitted the billing statement over Appellant=s objection.  We do not reach the merits of Appellant=s argument, however, because Appellant
failed to preserve error, if any, for appellate review.

To preserve error
for review, a timely and specific objection must be followed by an adverse
ruling.  See Tex.R.App.P. 33.1(a).  An appellant waives any error regarding
improperly admitted evidence if that same evidence is brought in later by the
defendant or by State without objection. 
Rogers v. State, 853 S.W.2d 29, 35 (Tex.Crim.App. 1993); Ethington
v. State, 819 S.W.2d 854, 858 (Tex.Crim.App.
1991).  There are two exceptions
to the general rule that a party must continue to object and obtain a ruling
for each instance of inadmissible evidence. 
See Ethington, 819
S.W.2d at 858-59.  To avoid having
to constantly object, a party may request a running objection stating the
specific grounds for the ruling or request a hearing out of the jury=s presence as to all objectionable
testimony.  Id.  Error is not waived, however, when the
evidence is brought in later in an effort to meet, rebut, destroy, deny, or
explain the improperly admitted evidence. 
Rogers, 853 S.W.2d at 35.








The record in this
case reveals that the State initially offered the billing statement into
evidence during Detective Gutierrez=s
testimony.  Appellant=s counsel made a hearsay objection,
arguing that the billing statement was untrustworthy because it contained
blacked-out portions.  The trial court
overruled the objection and admitted the billing statement into evidence.  Detective Gutierrez then testified that he
found seven entries of Appellant=s
phone number among the incoming calls on M.F.=s
cellular phone records on the morning of January 1, 2000.  During cross-examination, Appellant=s counsel showed Detective Gutierrez
the billing statement and asked him why some phone numbers had been
blackened-out.  Detective Gutierrez
stated that he could only guess, but did not know why.  Appellant=s
counsel did not renew this objection to the State=s
exhibit nor did he attempt to rebut, destroy, deny, or explain the billing
statement beyond emphasizing Detective Gutierrez=s
lack of knowledge as to why the billing statement was partially redacted.  During re-direct examination, the State again
asked Detective Gutierrez to review the billing statement and identify the
blacked-out dates.  Detective Gutierrez
responded that the dates ranged from December 26 to December 29, while the
pertinent date of his investigation was January 1, 2000.  Appellant=s
counsel did not object to this further testimony by Detective Gutierrez
regarding the billing statement.

During direct
examination of M.F., the prosecutor asked her to review State=s Exhibit Three, the billing
statement.  M.F. identified a number of
telephone calls she made or received from December 31, 1999 to January 1,
2000.  M.F. also testified that she
received several calls and voice mails from Appellant after he left her house
in which Appellant repeatedly apologized for what he had done to her.  Appellant=s
counsel did not raise an objection to M.F.=s testimony based on improperly
admitted evidence.  On cross-examination,
Appellant=s counsel
asked M.F. to review the billing statement and asked her to identify a
particular outgoing call logged at 2:25 a.m. 
M.F. explained that the phone call was to an ex-boyfriend to wish him a
happy New Year.








The record shows
that Appellant=s counsel
initially objected to the billing statement when it was introduced into
evidence.  However, Appellant=s counsel never renewed his objection
when the State asked witnesses to testify about the contents of the document
nor did Appellant=s counsel
request a running objection to the trial court=s
ruling.  When Appellant=s counsel asked witnesses to testify
about the billing statement during cross-examination, he failed to elicit
testimony to rebut, destroy, deny, or explain the billing statement
evidence.  On several occasions, the same
evidence which Appellant had initially objected to was brought in later during
the trial without objection, therefore Appellant has
waived any error as to the inadmissibility of the billing statement.  Accordingly, we overrule Issue One.  

Exclusion
of Impeachment Evidence

In Issue Two,
Appellant contends that the trial court abused its discretion in not permitting
Appellant to present to the jury Antonio Aguilar=s
testimony concerning M.F.=s
conduct that night and what she said to Mr. Aguilar at her house.  Appellant argues that in so doing, the trial
court denied Appellant his due process right to present a defensive
theory.  

We review the
trial court=s
decision to admit or exclude evidence under an abuse of discretion
standard.  See Montgomery
v. State, 810 S.W.2d 372, 391 (Tex.Crim.App.
1991) (Opin. on reh=g); Levario
v. State, 964 S.W.2d 290, 296 (Tex.App.--El Paso
1997, no pet.).  Therefore, we
will not reverse the trial court=s
ruling as long as it was within the Azone
of reasonable disagreement.@  Montgomery, 810
S.W.2d at 391.  








In a bill of
exception, Antonio Aguilar testified that he drove M.F. home in her car.  While in the car, M.F. told Mr. Aguilar that
she wanted to still go out and party. 
According to Mr. Aguilar, M.F. stated, AIt=s too early.  Let=s
go party.  Let=s
go party.@  Mr. Aguilar told her it was already late and
that he had to go to work.  As they kept
driving, M.F. told Mr. Aguilar that she was having problems with her boyfriend
and that her boyfriend was jealous.  Mr.
Aguilar recalled that M.F. was flirtatious, laughing, and grabbed his knee
while he was driving.  As they parked in
front of her house, M.F. told Mr. Aguilar that she had about six beers in the
refrigerator and asked him to stay and party a little bit.  When they walked inside the house, M.F. was
still insisting that he stay.  Mr.
Aguilar kept telling her no, but M.F. grabbed his arm and said, AAh, come
on.  Stay for a little bit.@ 
Mr. Aguilar then told M.F. that he would go out to get more beers and
come back.  Mr. Aguilar told M.F. to lock
the door, but M.F. said she would leave it open until he came back.  Mr. Aguilar stated that he told M.F. he would
knock three times so that she would know it was him and M.F. said all
right.  Mr. Aguilar testified that he
made sure M.F. locked the door.

On appeal,
Appellant asserts that the excluded testimony supported his defensive theory
that M.F. could not remember what had happened, did not know who took her home,
and did not remember what happened with Mr. Aguilar and later on with Appellant
because of her state of intoxication. 
Appellant argues, Mr. Aguilar=s
testimony was admissible to directly contradict M.F.=s recollection of what happened, was a
prior inconsistent statement, and was a statement against interest.[1]  In response to Appellant=s complaint, the State argues on appeal
that Mr. Aguilar=s
testimony was properly excluded under Texas Rule of Evidence 608(b), which
prohibits the use of specific instances of a witness=
conduct for the purpose of attacking the witness=
credibility.

Rule 608(b)
provides:

Specific instances of the conduct of a
witness, for the purpose of attacking or supporting the witness= credibility, other than conviction of
crime as provided in Rule 609, may not be inquired into on cross-examination of
the witness nor proved by extrinsic evidence.

 








Tex.R.Evid. 608(b).  However,
there are three recognized exceptions to Rule 608(b) which are: (1) to expose
bias or interest; (2) to correct any affirmative misrepresentations made on
direct examination; or (3) to demonstrate a lack of capacity.  See Lagrone v.
State, 942 S.W.2d 602, 613 (Tex.Crim.App. 1997), cert.
denied, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d
235 (1997).  

Apparently,
Appellant sought to impeach M.F. by attacking her supposedly affirmative
misrepresentation as to her state of intoxication.  The record shows that several witnesses,
including M.F., testified that M.F. was drinking that night.  Jennifer Huerta testified that M.F. was drunk
at the party and had to be driven home. 
Mr. Aguilar testified before the jury that M.F. was acting Aa little crazy,@
needed help walking to her front door, and was intoxicated that night.  Mr. Aguilar also testified that M.F. was
hanging all over him and hugging him at the party.  Through testimony from State and defense
witnesses, the jury heard ample evidence concerning M.F.=s state of intoxication, which would
have supported Appellant=s
defensive theory.  The trial court did
not abuse its discretion in excluding the proffered testimony because it was
merely evidence of specific instances of M.F.=s conduct at her house and Appellant
had already rebutted M.F.=s
alleged affirmative misrepresentation that she was not intoxicated that
night.  Issue Two is overruled.

We affirm the
trial court=s
judgment.

 

 

May
22, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
We note that Appellant=s
counsel only argued to the trial court that Mr. Aguilar=s
testimony was admissible to show M.F.=s state of mind, her conduct, and what
she said to Mr. Aguilar at the house.