# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00579-CR

**Joel Curtis Freeman, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 55410, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Joel Curtis Freeman pleaded guilty to intoxication assault and a jury assessed punishment at nine years' confinement. *See* Tex. Pen. Code Ann. § 49.07 (West 2003). In his sole issue, he complains that the district court erred by admitting evidence of statements made during plea negotiations. We will affirm the judgment.

## BACKGROUND

On July 4, 2003, ten-year-old Kiara Marshall was standing in front of a van with a group of people watching fireworks on the side of a road near Troy, Texas. Appellant's vehicle collided with the van, severing one of Kiara's legs, and seriously injuring her other leg. State trooper Thomas Nipper arrived at the scene and administered field sobriety tests to appellant. Based on

appellant's inability to perform the tests satisfactorily, he was arrested for driving while intoxicated. Appellant requested a blood test, which revealed that his blood alcohol content was 0.33.[1]

Appellant was indicted and pleaded guilty to intoxication assault. *See id*. In considering his punishment, the jury heard testimony from over twenty-five witnesses, including Kiara, her mother, and her doctor. Kiara was initially in the hospital for thirty-nine days after the accident. For the first three or four days, the doctors were not sure that she would live. She could not eat or drink anything for the first twelve to fourteen days due to the tubes in her mouth after surgery. Furthermore, she could not attend school for almost an entire year—until April 2004.[2] She still has scars on her face from the accident. Moreover, Kiara's mother testified that Kiara was scheduled for additional surgery the week after trial in which a plate would be inserted in her left leg due to continuing problems from the accident.

Appellant testified that he was attending Alcoholics Anonymous classes and other counseling, and that he had not consumed alcohol since January 12, 2004. He stipulated that he had been convicted of driving while intoxicated twice before the incident in this case. The jury assessed punishment at nine years' confinement. This appeal ensued.

---

[1] An individual is "intoxicated" if he or she (a) does not have the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (b) has an alcohol concentration of 0.08 or more. *See* Tex. Pen. Code Ann. § 49.01 (West 2003).

[2] A teacher taught her at home.

## DISCUSSION

In his sole issue, appellant contends that the district court erred by allowing the State to discuss the fact that appellant offered money to Kiara's family—an offer that was apparently made in plea negotiations—in violation of Texas Rule of Evidence 410. *See* Tex. R. Evid. 410. He asserts that he was harmed by the court permitting the State to conduct examination on this topic because he received close to the maximum punishment available although he was eligible for probation. The State argues that appellant failed to timely object and, thus, waived any error regarding the State's questions. Alternatively, the State claims that appellant opened the door to such questions by asking related questions of the relevant witness.

Rule of evidence 410 provides, in relevant part, that

Except as otherwise provided in this rule, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:

. . .

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority, in a civil case, that do not result in a plea of guilty or that result in a plea of guilty later withdrawn, or in a criminal case, that do not result in a plea of guilty or a plea of nolo contendere or that results in a plea, later withdrawn, of guilty or nolo contendere.

However, such a statement is admissible in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it.

*Id.*; *see Bowie v. State*, 135 S.W.3d 55, 61 (Tex. Crim. App. 2004).

To preserve error for review, a timely and specific objection must be made and followed by an adverse ruling. Tex. R. App. P. 33.1; *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). Generally, a party must object every time allegedly inadmissible testimony is offered in order to preserve error. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (citing *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984)). Objections made after questions are asked and answered generally do not preserve error. *See Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) (objection should be made as soon as ground for objection becomes apparent; if defendant fails to object until after objectionable question has been asked and answered, and he can show no legitimate reason to justify delay, his objection is untimely and error is waived); *Hitt v. State*, 53 S.W.3d 697, 707-08 (Tex. App.—Austin 2001, pet. ref'd); *see also Valencia v. State*, 946 S.W.2d 81, 82-83 (Tex. Crim. App. 1997) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)).

Kiara's mother, Renee Marshall, testified for the State. On cross-examination, appellant's trial counsel discussed the fact that Ms. Marshall had not been willing to meet with appellant or permit him to visit Kiara in the hospital.

> Q: I know this has been, you know—I don't even know how to describe what you have gone through. I can't other than it's just terrible. But there has to be some resolution to what you've gone through and what my client has done and what he's going through.
>
> . . .
>
> Q: Would you like there to be a resolution?
>
> A: There has to be a resolution.

4

Q: What would you like my client to do?  What can my client do?

A: Your client has done enough to my life.  Now he needs to take responsibility for what he has done to our lives.

Q: Are you willing to consider giving him any kind of opportunity to try to make restitution, to make amends, to do something good for the bad he has done?

A: What could he possibly do?  What could he possibly do?

Q: He can't make her whole.  I know that, you know that.  But he could let you know how he feels.

After the State objected to appellant's attorney "making a speech to the witness," the testimony moved on to other topics.  The State asked a few more questions on re-direct:

Q: Did you understand [appellant's attorney's] offer to you to be—that the defendant wanted to pay something, money to you in exchange for probation?

A: Yes.

Q: And did you turn that down?

A: Yes.

Q: Do you think [] probation is appropriate in the case?

A: I do not think it's appropriate.

Appellant's attorney was then permitted to cross-examine Ms. Marshall again.  He asked her, "So what was communicated to you was that my client wanted to pay you money in exchange for probation?"  Ms. Marshall corrected him, stating "restitution."  A few questions later, appellant's attorney asked her:

5

Q: . . . But isn't that confessing of the wrong the beginning of accountability?

A: Yes, it is.

Q: Would be [sic] working hard to try to help someone, whether it be financially—and unfortunately maybe in our society all it can do is be financial—is that a method of trying to reconcile the wrong you have caused?

A: There are oftentimes sorry is not enough.

Q: I'm sorry?

A: There are oftentimes sorry is not enough.

Q: No. But is working every day to try to do something to repay, is that—what more can you—

A: You don't understand. It's not about the money for me.

Subsequently, Ms. Marshall completed her testimony, and the State called Kiara and her doctor to testify. The State then rested its case.

Appellant began his defense with his own testimony. On cross-examination, the State discussed appellant's testimony that he had been attending Alcoholics Anonymous. Appellant testified that the ninth step of the twelve-step program was "making amends wherever possible, except when to do so would injure them or others," and that he was attempting to "make amends" with Kiara and her family. The State asked appellant if he could understand how his

Q: . . . constant attempts to have [appellant's attorney] have meetings with them and offer them money for her college as long as you can have a probation [sic] are hurtful to them?"

A: I didn't offer—

6

After another exchange of questions, appellant's attorney objected that the State's questions impermissibly constituted testimony that appellant had harassed Kiara's family and offered them money. However, appellant's attorney acknowledged that the State "could ask him [such] questions if he ever did that." The court sustained the objection. The State then continued its cross-examination by asking appellant, "Well, you did have your lawyer make an offer to her, right? You wanted your lawyer to convey an offer that you would pay for Kiara's college as long as you would have a probation [sic], right?" Appellant answered "No, ma'am." Appellant's attorney asked to approach the bench, and a discussion was held off the record. The jury was excused, and appellant's attorney then objected to the mention of "any plea negotiations or suggestions I may have made, such that if he had probation, he would be able to do something like that." The court ruled that appellant had "opened the door" to the questions, but admonished the State not to use terms such as "buy off" the family in reference to appellant's offer. The State agreed, and the topic was not mentioned again during questioning of Ms. Marshall or in appellant's testimony.

Appellant did not object when the discussion of financial restitution was first admitted, or even later when he was questioned explicitly regarding whether he had offered to pay for Kiara's college. Furthermore, his own trial counsel asked him questions regarding whether he was "working hard to help" and suggested that financial assistance may be his only manner of helping. His final objection to the matter came after the question had already been answered.

We hold that based on the record before us, appellant failed to preserve error. *See* Tex. R. App. 33.1; *Ethington*, 819 S.W.2d at 858; *Turner*, 805 S.W.2d at 431; *Hudson*, 675 S.W.2d at 511; *Lagrone*, 942 S.W.2d at 618. We overrule appellant's sole issue.

## CONCLUSION

Having overruled appellant's sole issue, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   April 27, 2006

Do Not Publish