**Opinion issued August 20, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

## NO. 01-14-00487-CR

————————————

**IGNACIO LEAL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1353405**

---

## MEMORANDUM OPINION

A jury found appellant, Ignacio Leal, guilty of the offense of aggravated

sexual assault of a child,[1] and the trial court assessed his punishment at

---

[1]    *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2014).

confinement for twenty years. In four issues, appellant contends that his trial counsel rendered ineffective assistance and the trial court erred in admitting out-of-court statements made by a testifying witness, permitting witnesses to testify about the complainant's credibility, and allowing the State to convict him for unindicted acts of sexual assault.

We affirm.

## Background

The complainant's sister testified that in April 2012, while she was working at a restaurant, her mother sent her a text message, requesting that she talk with her as soon as she arrived home from work. When she arrived at home, her mother told her about an incident that had occurred between the complainant and appellant, the cousin of the complainant and her sister. The next day, she asked Houston Police Department ("HPD") Officer R. Segura, who also worked as a security officer at the restaurant, what he knew about child molestation. She then told Segura that her "cousin was touching" her sister. She also explained that when her parents divorced sometime between 2003 and 2004, her father went to live at her uncle's home, where appellant also lived. After the complainant was five years old, she and her sister would visit her father at the uncle's home. They stopped visiting her uncle's home when her father moved out of it in approximately 2012.

Officer Segura testified that while he was working as a security officer at a restaurant, he had a conversation with the complainant's sister, who told him that her sister may have been sexually assaulted. Based on this conversation, Segura created a sexual-assault-of-a-child report.

The complainant, who was ten years old at the time of trial, testified that, when she was four or five years old, while staying with her father at her uncle's home, something unusual happened to her. She explained that once, when she and her brother were in appellant's bedroom, her brother had to leave the room to go to use the bathroom. Appellant then got closer to her, put his hand inside her pants, and put his finger into her vagina. The next day, under similar circumstances, appellant again put his hand inside her pants and his finger in her vagina. Over time, appellant continued to sexually assault the complainant. Although she stated that appellant would touch her vagina every time that she visited her father for the weekend at her uncle's home, she clarified that it happened "just some days." The abuse stopped when she was seven years old, after the father had moved out of the uncle's house.

During cross-examination, the complainant stated that appellant had touched her every time that she had visited her father and this had occurred for "years." She noted that the abuse started when she was four or five years old and lasted until she was eight years old, and she explained that the last time that appellant had

touched her vagina, she was at appellant's home for a visit, but did not stay for the entire weekend.

Tasha Rogers, an investigator and forensic interviewer at the Harris County Children's Assessment Center, testified that she interviewed the complainant and, although the complainant could not give specific dates of the abuse, this was a "common" occurrence for child-sexual-abuse complainants. When asked if the complainant had made false allegations, Rogers said, "No." She explained that "the child's demeanor, the consistency of what was said to her and what was not said to her, when it happened, where it happened, she was very consistent on that. And especially the sensory of what it felt to her being touched on a specific part of the body, she repeated that." When asked if the complainant's story would be consistent if she were coached, Rogers responded, "[T]hey will have a difficult time remember[ing] the details." On cross-examination, Rogers admitted that she has interviewed children who have made false allegations, and she noted that children can be coached to use the "correct" words.

Dr. Marcella Donaruma, a child-abuse pediatrician, testified that she physically examined the complainant, who told her that appellant had touched her vagina and buttocks area with his hand. He first touched her when she was four years old, and last touched her when she was eight years old. Dr. Donaruma explained that in 90 percent of child-sexual-assaults, she cannot tell by examining

4

the child's body whether any abuse occurred. She explained that it is normal not to find physical evidence of abuse in child-sexual-assault cases and she would not expect to see trauma two months after the last incident of sexual abuse involving digital penetration. Dr. Donaruma concluded that the complainant's physical "exam was consistent with her history of being fondled by [appellant] repeatedly over time." On cross-examination, Dr. Donaruma admitted that she was "not a lie detector" and it was possible that the complainant might not be telling the truth.

Appellant testified that the complainant's father, his uncle, did live with his family from 2005 to 2008, when he was thirteen years old and in the ninth grade. Appellant agreed that on their visits, the complainant and her brother were often with him in his bedroom, but when her brother left the room, the complainant would leave with him. He explained that he was never alone with the complainant and had never touched her inappropriately. On cross-examination, appellant admitted that he was alone with the complainant "maybe once."

## Hearsay

In his first issue, appellant argues that the trial court erred in allowing the complainant's sister to testify that she had told Officer Segura that her "cousin was touching" the complainant because it was hearsay and, "[c]ontrary to the court's belief, any out-of-court statements, even out-of-court statements made by the

testifying witness, are considered hearsay if they are offered to prove the truth of the matter asserted."

The complainant's sister testified, in pertinent part, as follows:

[State]:        Okay.  So when you saw [Officer Segura] on that Tuesday, after these conversations with your mom, what did you decide to do when you saw him?

[Sister]:       Well, the thought about what my mom had told me never left my head. So when I was there and I saw him, I asked him what was child molesting.  And he explained to me and he asked me, Why are you asking me this?  It's very unusual for you.

[Appellant]: Objection, hearsay.

[Court]:       That's sustained.

[State]:        And what did you do next?

[Sister]:       When he asked me, I just told him there's—

[Appellant]: Objection, hearsay.

[Court]:       No, not what she says.

[Sister]:       I told him there's just somebody I know that's going through something.  And, well, I want to know what can happen or what—what should be done.

[State]:        And what was his reaction?

[Sister]:       He was—he was trying to—he kept asking me why because since I had started working there, never had I asked him something like that.  And, well, I had already been working there and I had already gotten comfortable with him and I told him.  I stepped aside and I told him.

[State]:    You told him what?

[Sister]:   I told him that my sister had gone, gone through that.

[State]:    Gone through what?

[Sister]:   *That my cousin was touching her*.

[State]:    Why did you not want to tell him from the beginning that it was about your sister?

[Sister]:   Because I was scared and it's not easy to tell somebody what's going on.

[State]:    What were you scared of?  What happened after you told Officer Segura this conversation?  What happened next?

[Sister]:   He told me that we should let somebody know.  And after that I left home; I didn't talk to my mom about it.  I didn't tell her I had told him.

[State]:    Why not?

[Sister]:   Because I didn't want her to feel like I was just letting— just letting anyone know what had happened.

(Emphasis added).

To preserve error regarding the admission of evidence, a party must make a timely objection each time the objectionable testimony is elicited and obtain a ruling on each objection.  TEX. R. APP. P. 33.1; *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).  Any error in the admission of evidence is cured where the same evidence comes in elsewhere without objection.  *Ethington*, 819 S.W.2d at 858.  Thus, when there is an objection to the first question on a

7

particular subject, but no objection to subsequent questions on the same subject, error is not preserved regarding the admission of testimony on that subject. *Id.* at 859–60; *see also Salazar v. State*, 131 S.W.3d 210, 214–15 (Tex. App.—Fort Worth 2004, pet. ref'd).

Here, because appellant did not object to the testimony of the complainant's sister that she had told Officer Segura "that [her] cousin was touching" her sister, appellant did not preserve error for our review. *See* TEX. R. APP. P. 33.1; *see also Lane v. State*, 151 S.W.3d 188, 192–93 (Tex. Crim. App. 2004) (holding unless defendant obtains running objection, he waives complaint to admission of particular evidence when same or like evidence received elsewhere without objection); *Ethington*, 819 S.W.2d at 859–60 (holding error not preserved when initial objection overruled and defendant did not object to subsequent detailed testimony on same subject, stating "initial objection . . . should have been followed by further objections or a request for a 'running' objection").

Accordingly, we hold that appellant has waived his first issue.

## Witness Credibility

In his second issue, appellant argues that the trial court erred in allowing Tasha Rogers and Dr. Donaruma to testify about the complainant's credibility because only a jury may weigh and determine the credibility of a witness.

Appellant complains that Dr. Donaruma was allowed to testify as follows:

[State]: And the allegation in this case is from April 1, 2012. Your examination of [the complainant] was on May 30, 2012. Would you have expected a normal exam in that case?

[Dr. Donaruma]: Yes.

[State]: So finally, how would you characterize the exam, then in this case: As consistent with or not consistent with sexual assault?

[Dr. Donaruma]: Her exam was consistent with her history of being fondled by her cousin repeatedly over time.

Appellant also complains that Rogers was allowed to testify as follows:

[State]: Was she able to give you specific dates and times when she had been molested by [appellant]?

[Rogers]: No.

[State]: And was that surprising to you?

[Rogers]: No.

[State]: And why was that not surprising?

[Rogers]: It had been occurring from the age [of] four, five to eight. So, I believe it was all meshed in for her.

[State]: And is that common or uncommon?

[Rogers]: Common.

And appellant further complains that Rogers was allowed to testify as follows:

> [State]: The last topic I would like to cover with you is delayed outcry. Can you basically tell us what delayed outcry means for you as a forensic interviewer.
>
> [Rogers]: Delayed outcry means that—considering in this case it had happened at various ages, that means there was delay. She finally said something at the age of eight. And so it could have been due to shame, embarrassment, fear of what the consequence may be. Also, if a child is threatened not to say, that's why a child will wait so long to say something. Or they may not know that what's happening to them is even wrong.

However, during each of the above complained-of exchanges, appellant raised no objection at trial. Again, to preserve an issue for appellate review, a party must specifically object and obtain a ruling. *See* TEX. R. APP. P. 33.1.

Accordingly, we hold that appellant has waived his second issue.

**Election**

In his third issue, appellant argues that the trial court "erred in ruling that the State could convict [him] for unindicted acts of sexual assault without first giving [him] notice of the offenses the State intended to prove." The State argues that appellant did not preserve this issue because he did not make an election to have the State choose which specific act it intended to rely upon for a conviction.

If one act of sexual assault is alleged in an indictment but more than one act is shown by the evidence presented at trial, "the State must elect the act upon

10

which it would rely for conviction." *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988). After the State rests its case-in-chief, on a timely request by the defendant, the trial court must order the State to elect the act upon which it will rely for conviction. *Phillips v. State*, 193 S.W.3d 904, 909 (Tex. Crim. App. 2006); *O'Neal*, 746 S.W.2d at 772. And the trial court errs if it does not order the State to elect the act upon which it will rely for conviction. *O'Neal*, 746 S.W.2d at 772. Absent a request, however, the State is not required to make an election and no error is implicated. *See id.* at 771 n.3; *Crawford v. State*, 696 S.W.2d 903, 906 (Tex. Crim. App. 1985); *Scoggan v. State*, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. App. 1990) (when evidence shows two or more acts of intercourse, each of which constitutes offense, and indictment alleges only one offense, State required to elect act upon which it will rely to secure conviction if defendant moves for election).

In a footnote, appellant asserts that if he was required to move the trial court to make an election, his motion for directed verdict at the close of the State's case-in-chief sufficed to "compel the trial court to order the State to make an election." In his motion, which the trial court denied, appellant asserted that the indictment alleged that he committed sexual assault on or about April 1, 2012, but the complainant's father specifically testified that a sexual assault "did not happen at any time in 2012." However, the fact remains that appellant did not move to have

the State make an election. And he, in his motion for directed verdict, did not ask the trial court to order the State to elect a specific incident of sexual assault upon which to rely for a conviction. *See* TEX. R. APP. P. 33.1.

Next, appellant asserts that even if he did not preserve the issue, "this Court can nevertheless review for plain error," citing *Jimenez v. State*, 32 S.W.3d 233, 238–39 (Tex. Crim. App. 2000). The court in *Jimenez* held that a court must review unobjected to errors in the court's charge for fundamental error. *Id*. at 238–39. Here, however, appellant has not demonstrated that the trial court erred. Moreover, the court of criminal appeals has explained that a defendant may choose to waive an election as trial strategy. *See Cosio v. State*, 353 S.W.3d 766, 776 (Tex. Crim. App. 2011).

Although this case involves several different sexual assaults of the complainant, the record does not show that appellant moved to have the State make an election.

Accordingly, we hold that appellant has waived his third issue. [2] *See* TEX. R. APP. P. 33.1; s*ee Hendrix v. State*, 150 S.W.3d 839, 852 (Tex. App.—Houston

---

[2] In his third issue, appellant also generally complains that "it cannot be determined if the jurors in this case reached a unanimous decision." He notes that the election rule serves four very important purposes. *See Dixon v. State*, 201 S.W.3d 731, 734–36 (Tex. Crim. App. 2006). However, to the extent that appellant attempts to raise a separate complaint about the unanimity of the jury's verdict, he does not make a cogent argument as to how *Dixon* requires reversal of this case. *See* TEX. R. APP. P. 38.1(h).

[14th Dist.] 2004, pet. ref'd) (holding defendant waived issue where record did not show he requested election).

## Ineffective Assistance of Counsel

In his fourth issue, appellant argues that his trial counsel rendered ineffective assistance because he did not retain an expert witness to provide testimony in his defense. Appellant asserts that "[a]ny competent defense attorney would have retained experts" who "could have testified that if the abuse occurred, one would expect physical signs of trauma, thus rebutting the State's expert." He further asserts that an expert "could have testified about traits the Complainant may have exhibited that tend to invalidate her disclosures," thus "rebutting the testimony of" Dr. Donaruma and Rogers.

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the

effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). However, if "no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Here, because appellant did not file a motion for new trial, there is no evidence in the record as to whether his trial counsel consulted with expert witnesses and made the strategic choice to proceed without presenting expert testimony. Accordingly, we presume that trial counsel made all significant decisions in the exercise of reasonable professional judgment. *Jackson v. State*,

14

877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Broussard v. State*, 68 S.W.3d 197, 199 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Moreover, we note that appellant's trial counsel cross-examined the State's expert witnesses and elicited testimony that it was possible that the complainant may have fabricated the allegations and children have made false allegations in other cases. Trial counsel may have made the strategic choice to use the State's expert witnesses to support appellant's positions that he did not have an opportunity to assault the complainant and the complainant had been coached. Further, trial counsel may have determined that having the State's experts make these admissions could possibly have had a greater impact on the jury than if he had hired and presented his own expert. *See Taylor v. State*, No. 01-07-00801-CR, 2012 WL 246036, at *6 (Tex. App.—Houston [1st Dist.] Jan. 26, 2012, pet. ref'd) (mem. op., not designated for publication) (concluding defense counsel may have made strategic choice to use State's expert witnesses to support appellant's position rather than hire defense expert).

Accordingly, we hold that appellant has not demonstrated that his trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064; *Lopez*, 343 S.W.3d at 141–44.

We overrule appellant's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice


Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).


16